LAND, J.
This is a petitory action in which the plaintiffs in their original petition claimed to be the owners of an undivided half interest in the S. y¡, of S. E. % and the W. y¡t of the N. W. % section 22, township 8, range 3, situated in the parish of La Salle, containing 100 acres.
Plaintiff alleged that they acquired said property by inheritance from Joseph Tarpley, as the nearest of kin and sole heirs of said decedent, “that the said Joseph Tarpley was never married but once, and that there were never any issue from the marriage, the said marriage being with Jane Tarpley, who is now living,” and that the said Joseph Tarpley at the time of his death had no ascendants or descendants, or brothers or sisters, except the plaintiffs.
The petition further alleged that said Joseph Tarpley acquired the said land from the United States government by homestead entry, receiving his final receipt and patent about the years 1882 and 1890, respectively.
One of the plaintiffs, Sallie Douglas, claiming to be sister of the said Joseph Tarpley, also sued to annul a sale made by her4 in 1900 of her interest in said tract of land to one George R. Nicholson, on the ground that she was never authorized by her then husband, since deceased, or by any competent authority, to make said sale; that she received no consideration for said conveyance, and, being ignorant, did not know she was parting with her interest in said property.
*1101 The other plaintiffs, James Douglas and Annah Griffin, alleged nephew and niece of Joseph Tarpley, deceased, claim by representation of their mother, alleged to have been a sister of the deceased.
The facts alleged in the petition were sworn to by Sallie Douglas, one of the. plaintiffs.
Defendants filed exceptions of vagueness and no cause or right of action, which were overruled.
Defendants then, on June 9, 1913, answered at great length, averring, inter alios, that after Joseph Tarpley made a homestead entry on the land in dispute, on December 5, 1882, he died, and that his wife, Jane Tarpley, completed the residence necessary to complete the entry, made the final payment, and procured patent to the land on February 26, 1897, but that said patent erroneously issued in the name of Joseph Tarpley.
The answer avers that the alleged conveyance from Sallie Douglas to G. R. Nicholson was a good, valid, and perfect deed and conveyed any interest that the said Sallie Douglas may have had in such land, and further avers that at the time she signed said deed she was a feme sole.
The answer denies the alleged heirship of James Douglas and Joe Tarpley.
The answer denies that the defendant Good Pine Lumber Company is claiming more than an undivided half interest in the lands in dispute, and avers that the whole tract belongs in indivisión to said company, and the Trout Creek Lumber Company.
The answer sets up the chain of title under which said defendant claims and pleads the prescription of ten years.
The answer denies that the said Joseph Tarpley ever had any interest in said land, for the reason that the patent issued after his death, and the title passed to his surviving widow.
The answer avers that Joe Tarpley, from whom plaintiffs claim to inherit, was the illegitimate son of Joe Tarpley, Sr., and that Sallie Douglas and Martha Douglas, or Tarpley, were the illegitimate sisters of Joe Tarpley, Sr., who had two natural sons duly acknowledged, Louis and George Tarpley, who would have inherited from him in preference to the plaintiffs, that Joe Tarpley had other illegitimate brothers, one of whom left issue, and that the said Martha had three other children, who would be entitled to share with the plaintiffs.
Further answering, the Good Pine Lumber Company reconvened, in the alternative, for $275, amount of taxes paid on the land, and for $185 for the price paid.
The plaintiffs on November 13, 1913, filed an amended petition, on leave granted ex parte, which the defendants moved to strike out, on the ground that the same made material alterations in the subject-matter of the suit after issue joined. This motion was overruled.
The .most material allegations of the amended petition are, in substance, that since the filing of the original petition they had learned that Joseph Tarpley was never married to Jane Tarpley, and that subsequently they were the owners of all of the land in dispute instead of one-half interest therein; and the plaintiffs amended and supplemented the allegations of their original petition accordingly.
Defendants answered denying the allegations of the amended petition; and the cause was in due course tried on its merits.
Judgment was rendered in favor of the plaintiffs, decreeing them to be owners in indivisión of the whole tract in dispute, and further declaring the said sale from Sallie Douglas et al. to George R. Nicholson to be null and void.
Judgment was rendered in favor of the defendants against the plaintiffs in solido for the sum of $185 and taxes from October 2, *1103 1900 to 1913, inclusive, with interest from judicial demand; defendants to pay all costs of suit.
[1,2] We are of opinion that plaintiffs’ amended petition should have been disallowed and stricken from the flies, because directly contradicting the sworn allegations of the original petition that Joseph Tarpley and Jane Tarpley were married, and that the land in dispute was acquired by Tarpley during the marriage, and that on his death the plaintiffs, as next of kin, inherited an undivided half interest therein, and because raising, four months after answer filed, a new issue, excluded by plaintiffs’ sworn allegation of the marriage of Joseph and Jane Tarpley, and defendants’ admission of their status as married people.
We note the allegation in the original petition that Sallie Douglas was induced to sign the deed to Nicholson “for the purpose of securing some money for her sister-in-law, Jane Tarpley.”
The amended petition does not disclose how, when, or where Sallie Douglas, after the institution of this suit, discovered that her brother, Joe, had never married her sister-in-law, .Jane. .
Solemn judicial admissions cannot be contradicted' or withdrawn, except perhaps in clear cases of error, shown by convincing proof of honest mistake in, and timely discovery of the falsity of, the admissions.'
No such case is here presented. It'is evi-dent" that the amended petition was • an attempt by the plaintiffs to shift their position to meet the averments of the defendants that Jane'Tarpley, as surviving widow,’ became the ownpv of the homestead.
A“ judicial admission cannot be refracted to the prejudice of the adverse party. Boatner v. Scott, 1 Rob. 546.
Any consent or admission in- the progress of a suit from which the other party may derive any legal right cannot be withdrawn without his consent; he being entitled to its full legal effect. Kohn v. Marsh, 3 Rob. 48.
A judicial admission solemnly made cannot be denied. Gridley v. Conner, 4 La. Ann. 416; Edson v. Freret, 11 La. Ann. 710.
■ A party cannot deny a judicial admission solemnly made, nor shift his position at will to a contradictory one in relation to the subject-matter of litigation to defeat the action of the law..upon it. Denton v. Erwin, 5 La. Ann. 18. See, also, In re Immanuel Presbyterian Church, 113 La. 911, 37 South. 873.
If a judicial admission cannot be retracted, or withdrawn, without the consent of the other party, it is obvious that such an admission cannot be amended out of existence.
The record facts of this case are, in substance, as follows:
Joseph Tarpley entered the land on December 5, 1882, and in February, 1890, made his homestead, pre-emption, and commutation proof before the clerk of the Seventh judicial district court of Louisiana.,
. Tarpley described himself as 45 years of age, a farmer, having a wife and one child, and testified to his residence on said land since the spring of 1882', and to its improvements and cultivation.
The deposition of Tarpley was- corroborated in the main by the depositions of two witnesses, who,, among other things, testified to the residence of Tarpley and his family on said tract. ,.
On July 7, 1896, the .Acting Commissioner of the United .States General Land Office wrote the register and receiver at New Orleans, La., and,after referring .to the original entry of the land by Joseph Tarpley, and the “Final proof” made by.him on February 26, 1890, and after informing him that there was an excess of 0.48 of an acre in the tract, continued as follows:
“You will therefore notify Jane Tarpley, widow of the deceased entryman at Jena, Catahoula parish, La., and any other known parties in interest, using form. 4— 485, that-she will- be al *1105 lowed sixty ' days from the receipt of notice' within which to pay the excess due on ■‘Vioo of an acre or appeal herefrom, failing in which the final proof, herewith suspended, will be rejected.”
The above official letter was ruled out by the trial judge, but comes up annexed to a bill of exception.
On February 26, 1897, a United States patent issued conveying the said land unto Joseph Tarpley and to his heirs and assigns forever.
On October 2, 1900, “Jane Tarpley, widow of Joseph Tarpley, Sallie Douglas, sister of Louis Tarpley, son of Joseph Tarpley, deceased, and Robert Jackson, of the parish of Catahoula,” sold the whole tract of land to George R. Nicholson for $185 cash in hand paid.
The title passed from Nicholson by mesne conveyances to the Good Pine Lumber Company and the Trout Lumber Company, the former possessing for both.
It follows that whatever title Jane Tarpley had in' the tract of land passed to said two companies in indivisión.
As p>laintif£s are concluded by their sworn allegations from disputing the fact of the marriage of Joseph Tarpley and Jane Tarpley, the tract of land, in any event, belonged to the community, and her half interest therein passed to her vendee and his assigns.
The records of the United States Land Office show that Joseph Tarpley made his final proofs in the year 1890, and disclose nothing further until the year 1896, when the Commissioner wrote the letter to the register and receiver of the state land office, as above stated.
That letter indicates that the Commissioner had received notice of the death of Joseph Tarpley, and that Jane Tarpley was his widow. She, or some other party in interest, paid the excess price for the 0.48 of an acre of land, on account of which the final proofs had been held up by the Commissioner.
As we understand the legal situation, Joseph Tarpley perfected his homestead entry by furnishing final proofs which entitled him to a patent,to 100 acres of land, but the Commissioner did not wish to leave unsold a remnant of .48 of an acre in one of the subdivisions, and therefore required payment of the same from the widow or other parties in interest. The record does not disclose who paid for this fraction of an acre. We assume that the diligence of defendants’ counsel has discovered and produced all documents in the United States Land Office relating to the land entry in question.
[3] The record shows that Sallie Douglas was a married worn an when she joined Jane Tarpley, widow, in the sale of tliq homestead to Nicholson; and it does not appear on the face of the deed, or by any other writing, that Sallie Douglas was authorized by her husband or by a competent court to join in said conveyance.
In such a ease the wife has no capacity to sell. Civil Code, art. 122.
The nullity of such a sale by the wife is relative; and proceedings to annul the same can be instituted only by the husband or wife or by their heirs. Article 134,' Civil Code.
The act on its face is a conveyance of real estate by the widow and heirs of Joseph Tarpley, deceased. Sallie Douglas was the sister of the deceased and of his next of kin, but the other persons who joined in the deed were not heirs of the decedent.
The defendants in their answer set up the sale from Sallie Douglas to Nicholson as good and valid in law, and as transferring to him and his assigns her whole interest in the land in dispute.
[4, 5] It has been held that a defendant in a petitory action, who admits that he holds under plaintiff, cannot dispute his title. Watson v. Succession of Barber, 105 La. 456, 20 South. 949.
It has also been held that a party who *1107 acquired by purchase from another is es-topped to deny that his vendor had a title to convey. Thompson v. Vance, 110 La. 26, 34 South. 112.
Where a party buys property from a married woman, he cannot, when sued by her to annul the contract, set up that the property never belonged to her, but to community existing between her and her husband at the time of the purchase. Keating v. Wilbert, 119 La. 461, 44 South. 265.
It follows that, as defendants cannot dispute Sallie Douglas’ title as heir, and as the exclusion of her niece and nephew, eoplaintiffs, would make her the sole heir of the decedent, thp defendants have no legal interest in contesting their status as heirs.
It is therefore ordered that the judgment appealed from be so reversed and amended as to decree the plaintiffs to be the owners of an undivided half interest in the land described in said judgment, and as to reduce by one-half the sums allowed to the defendants on their reconventional demand, and it is further ordered that, as thus reversed in part and amended, the said judgment be, and is hereby, affirmed, and that the plaintiff pay the costs of appeal.