(97 South. 40)

No. 25762.

**WETHERBEE et al. v. RAILROAD LANDS CO., Limited, et al.**

(June 4, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Libel and slander** &copy;&#8658;140—Defendants' possession when not continued for one year does not prevent action in jactitation.

Defendants' possession of land claimed by plaintiffs, when not allowed to continue for one year so as to legally oust plaintiffs' possession, does not prevent maintenance of action for slander of title.

**2. Pleading** &copy;&#8658;36(3)—Admission of plaintiffs' ownership with knowledge of all facts estopped defendants to set up denial of ownership by amendment.

Where defendants, with full knowledge of alleged defects in foreclosure proceedings, on which plaintiffs' title depended, admitted plaintiffs' ownership in their original answers, and the admission was not made through error of law or fact, they were bound by their admissions, and judicially estopped to deny plaintiffs' ownership by amendment.

**3. Mines and minerals** &copy;&#8658;55(2)—Grant of oil or gas conveys only servitude even though they be not fugacious to the extent formerly supposed.

The fact, if true, that oil and gas in the soil are not fugacious to the extent formerly supposed does not change the rules that they are not subject to absolute ownership apart from the soil, and that grant or reservation thereof carries only right to extract them and is a servitude subject to prescription in case of nonuser.

**4. Mines and minerals** &copy;&#8658;55(7)—Reservation of right to minerals reserves only servitude prescribed by nonuser.

A deed reserving exclusive right to iron and coal and other minerals, with all necessary privileges for mining, etc., and requiring the vendees not to hold adversely or permit adverse holding, conveyed only a servitude which was prescribed by nonuser for 10 years.

**5. Mines and minerals** &copy;&#8658;55(8)—Persons developing oil on lands of another held to be allowed expenses.

Where plaintiffs, without resorting to proper legal remedies until oil had been discovered, permitted defendants claiming under alleged reservation of oil and gas to develop the property, and would be enriched at defendants' expense if not required to reimburse defendants, defendants are entitled to reimbursement for their expenditures.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Action by J. W. Wetherbee and another against the Railroad Lands Company, Limited, and others. From a judgment for plaintiffs, and for defendants in reconvention, all parties appeal. Affirmed.

Wise, Randolph, Rendall & Freyer, of Shreveport, for Railroad Lands Co.

Blanchard, Goldstein & Walker, of Shreveport, for R. O. Roy and Hard Times Oil Co.

Thigpen, Herold & Lee and Gilmore & Cousin, all of Shreveport, for George W. Wetherbee and another.

DAWKINS, J. This is an action in jactitation for slander of title, covering the following described property, to wit:

(1) S. E. ¼ of S. W. ¼ of section 3, S. E. ¼ of N. E. ¼, the N. W. ¼ of N. W. ¼ and S. ½ of section 9, the N. W. ¼ of N. E. ¼ and W. ½ of section 15, and N. E. ¼ of N. E. ¼ and W. ½ of N. E. ¼, the E. ½ of N. W. ¼, N. W. ¼ of S. W. ¼ and S. ½ of S. E. ¼ of section 23, all of section 25, the E. ½ of N. E. ¼, E. ½ of S. E. ¼ of section 27, and the N. ½ and S. E. ¼ of S. E. ¼ of section 35, all in township 19 north, range 11 west.

(2) All of section 21, N. E. ¼, the N. ½ of N. W. ¼ and S. E. ¼ of N. W. ¼ of section 29, in township 19 north, range 11 west.

Plaintiffs allege that the defendants are claiming to be the owners of all the oil, gas, and other minerals lying in and under said described property, and that within the 10 months next preceding the filing of this suit, defendants had, over the protest and warning of petitioners, trespassed upon said property by drilling the same for oil, gas, and other minerals.

The prayer was for judgment decreeing that defendants had slandered plaintiffs' title, for the sum of $5,000 as attorney's fees, and in event defendants should convert the said suit into a petitory action peititoners reserved the right to file an appropriate answer thereto.

Defendants R. O. Roy and Hard Times Oil Company filed exceptions of want of possession in plaintiffs, and averred that they (defendants) were in possession under an oil, gas, and mineral lease from the Railroad Lands Company, Limited, "the owner of the minerals in and under the lands described in the petition." They also filed exceptions of no cause or right of action.

Defendant Railroad Lands Company, Limited, filed similar exceptions.

The exceptions of no cause or right of action were overruled, and the exceptions of want of possession were referred to the merits.

The minutes of the court also mention a motion to elect by the defendants, but we have not been able to find it in the record. However, we gather from the minutes that it must have been to have the plaintiffs declare whether they desired to assume the position of plaintiffs in a petitory action as to the minerals, or would rely upon the action of slander of title. Plaintiffs declared that they would stand upon their claim of slander of title, and the motion to elect was overruled.

Reserving its exceptions, defendant, Railroad Lands Company, Limited, admitted the ownership in plaintiffs of the lands, but denied that they had any right or interest in the oil, gas, or other minerals thereunder; the latter it claimed by reservations made in the deeds by which the lands were sold. It prayed that the exceptions be maintained and the suit dismissed; that, if overruled, plaintiffs' demands be rejected, and, in the event plaintiffs' contentions were sustained, that it recover the sum of $28,315.39 as expenditures and expenses incurred in the development and exploitation of said lands for oil and gas.

Defendants Roy and Hard Times Oil Company also denied the possession of plaintiffs, but likewise admitted their ownership of the land, less and except the oil, gas, and other minerals therein and thereunder. They also claimed the right to develop the property for oil, gas, and other minerals under leases from the Railroad Lands Company, Limited; that they had acquired the same in good faith, under competent legal advice; and, in event of eviction, asked for judgment against plaintiffs for the sum of $28,315.39, as their expenses in developing the property.

Subsequently, defendants Roy and Hard Times Oil Company filed an amended answer

in which they alleged that, through error of law and fact, they had admitted the ownership by plaintiffs of the said lands, but desired to amend by denying said ownership; that plaintiffs claimed said property through a foreclosure sale in the matter of Allen Bros. & Wadley, Limited, v. R. B. Pace on the docket of the district court for Bossier parish, and that the said proceedings and the sale made thereunder were null and void, for the following reasons:

(1) That at the time of said proceedings R. B. Pace was proceeded against as a non-resident, when in truth and fact he was domiciled in Caddo Parish;

(2) That a portion of the property purporting to have been sold in said proceedings was not covered by the mortgage; and·

(3) That the said sale was made, in part, to pay a claim of $480 as interest, which was not due, but had already been paid.

Defendants then set up a new chain of title, emanating by mesne conveyance from the said mortgage debtor, R. B. Pace.

Defendants prayed that the said foreclosure proceeding be declared null and void, and otherwise the prayer was the same as that of the original answer.

Thereupon plaintiffs moved to disallow and strike from the record the said amendment, upon the following grounds:

(1) That same was filed without leave of the court;

(2) That said answer changed the· issues; that the facts and law upon which the alleged error was based were well known to defendants at the time of filing their original answer, which admitted plaintiffs' ownership of the lands; and that defendants were therefore judicially estopped to deny the same;

(3) That plaintiffs were purchasers in good faith upon the face of the public records by mesne conveyances from the adjudicatees at said sale, and could not be affected by said alleged latent defects; and

(4) That if such defects existed the same could not be urged in the manner here attempted, but should have been asserted either by way of appeal from the order of seizure and sale or through writ of injunction against the executory process.

Plaintiffs also pleaded the prescription of five years under article 3543 of the Revised Civil Code in bar of said attack.

The motion to strike out and disallow the amended answer was overruled, and plaintiffs filed pleas of prescription of 10 years, both liberandi causa and acquirendi causa.

The case was tried on its merits, and there was judgment for plaintiffs, decreeing that the reservation by the Railroad Lands Company of rights to certain minerals in and under the lands first described in the beginning of this opinion did not include oil and gas, and, as to those secondly described the plea of prescription liberandi causa was sustained, and all of said lands and the minerals therein were held free from any claim whatsoever of defendants. But the court gave judgment in reconvention for defendants R. O. Roy and Hard Times Oil Company in the sum of $28,315.39, expended by them in developing said property for oil and gas.

All parties have appealed.

### Opinion.

In their original brief, defendants Roy and Hard Times Oil Company have stated the issues presented by this appeal as follows:

(1) The exception of no cause of action;

(2) The claim by Roy of title to the land through mesne conveyance from R. B. Pace;

(3) As to the correctness of the ruling of the lower court, in excluding evidence to show the nonfugacious nature of oil and gas; and.

(4) The reconventional demand.

Counsel for defendant Railroad Lands Company, Limited, also rely upon these is-

sues, and concur in the argument and contentions of the other defendants.

Plaintiffs seek to reverse the judgment in reconvention, but otherwise ask an affirmance of the judgment below.

### The Exception of No Cause of Action.

[1] The basis of the argument that the petition discloses no cause of action is that, while plaintiffs claim possession (their suit being one for slander of title, to maintain which possession is required), in subsequent paragraphs they admit that defendants are in actual possession, and had been, for 10 months prior to the filing of the petition, drilling and exploring for oil and gas. In effect it is said that, while in an ordinary possessory action, it is sufficient that the disturbance should have taken place within the year, and that the plaintiff should not have been ousted for that length of time before bringing the action; yet, in a suit in jactitation or slander of title, where the object is, not to quiet or protect that possession, but to suppress the slander or cast out the spurious claims of the defendant, such a plaintiff must, at the time his suit is brought, be in actual, physical possession.

Defendants have cited a long list of authorities holding it is necessary that the plaintiff, in either a possessory action or one in slander of title, should be in possession of the property as to which the possession has been disturbed or the slander committed; but, so far as we have been able to find, no case has made the distinction for which defendants contend. It is true that in a possessory action strictly speaking, the defendant cannot, without the consent of plaintiff, convert the same into a petitory one to try title (except as modified by Act 202 of 1920); while, on the other hand, the action in jactitation has for its object to compel the defendant to either desist from claiming title or to set up and establish his said title (and it has been held that this may be done in either a direct action or in answer to the claim of slander); yet, as above stated, no decision of this court has been cited which makes the distinction urged; and we can imagine no reason in principle for holding that any kind of possession, different from that of an ordinary possessory action, should be required in a proceeding like the present one. If defendant's position were correct, then all that a party who might make such pretensions would have to do to preclude the bringing of an action of slander of title would be to take possession of the property, forcibly or otherwise. If a trespass of 10 months duration, as here alleged, was sufficient to defeat such a proceeding, we can see no reason why one day or one hour might not be just as effective. On the other hand, we think such an act or acts, which have not been allowed to continue for a year so as to oust in law the possession of the plaintiff, are *merely evidence supporting or aggravating* the claims and pretensions of the defendant as against which the plaintiff or the possessor has a right to the action of jactitation for protection. It is true that in such circumstances he might also resort to the possessory action; but we do not think it follows that he is deprived of the other remedy, i. e., the action in slander of title. Moreover, it might be that such a possessor would desire to compel the claimant to assert his title, and the action in jactitation would be the appropriate means for compelling that course; whereas, in the possessory action nothing but the question of possession would be adjudicated.

For these reasons, we are of the opinion that the exception of no cause of action cannot be maintained.

### The Claim of Ownership Through R. B. Pace.

[2] As heretofore stated, all of the defendants in their original answer admitted the ownership by plaintiffs of the lands in ques-

tion. By the amended answer it was sought to change this position and to deny such ownership because of certain alleged defects in the foreclosure proceedings by which plaintiffs' ancestors in title acquired the property, the allegation being that through error of law and fact said admission had been made. But it clearly appears that all of the facts were well known to defendants when the original answer was filed, and there is not the slightest showing of the error pleaded. In such circumstances, we must hold that defendants were bound by their admissions, thus advisedly made, and that they are judicially estopped to now deny that plaintiffs own the land. Douglas et al. v. Nicholson et al., 140 La. 1098, 74 South. 566, and authorities cited.

### Admissibility of Evidence as to the Nature of Oil and Gas.

[3] Defendants complain of the refusal of the lower court to permit the introduction of testimony by experts to prove that oil and gas do not move of their own accord through the earth's strata. It is contended that recent experience has demonstrated that these substances, in large measure, are confined to certain sands which remain in place, or are incased within certain rock formations from which they can be drawn only by puncturing the cap rock or container. We are urged, therefore, to reconsider and to reverse the conclusions reached in Frost-Johnson Lbr. Co. v. Heirs of Salling, 150 La. 756, 91 South. 207, and numerous other cases. However, even in their present contention, counsel do not deny that those substances possess, to some extent, the qualities mentioned, but only in a lesser degree than was formerly supposed. It is admitted that for a distance of approximately 200 feet a contiguous proprietor may drain from under his neighbor's land the oil and from a much greater distance natural gas. If the present contention be true, it merely serves to modify in a limited degree the theory upon which the impossibility of exclusive ownership rested in those decisions. Even if we should admit the correctness of this position, we do not think it could change in principle the conclusions reached in those cases; hence we find no error in the ruling of the lower court.

[4] Before taking up the fourth assignment of errors hereinabove noted and mentioned in defendants' original brief, we shall consider the point made against the decision of this court in the case of Huie-Hodge Lumber Co. v. Railroad Lands Co., Ltd., 151 La. 197, 91 South. 676, which, concededly, is one of the main, if not the principal, issues in this case. We held there that the language of the reservation (practically the same as that in the present case) did not purport to do more than to reserve a *right* to the minerals in and under the land which were sold; consequently, we were not called upon in that case to say what the effect would have been had the deed purported to convey the solids or minerals in place, such as coal, iron, etc., themselves. It is said that the definition of ownership in article 488 of the Civil Code, and the incidents which flow therefrom, as outlined in succeeding articles, embrace no greater elements than those included in the reservation in this case; i. e., "the exclusive right to the iron, coal and other minerals, contained in or upon said lands, with all necessary privileges for mining, etc."

The definition of ownership contained in article 488 is rather clear, and, of course, embraces every element of control and dominion which can be exercised over property. However, the subsequent articles merely illustrate these elements, any one or all of which may be enjoyed under contract without the title or ownership of property being vested in the person so enjoying them. On the other hand, if the property itself be con-

veyed (in the absence of questions such as those which have arisen in other cases now before the court) all of these rights follow as a consequence. The difference is simply that which exists between a right *to* a thing and a right *in* the thing itself. If the parties had seen fit, they could have used words which, clearly and unmistakably, would have shown a purpose to convey the minerals themselves. Instead, the vendor who' made the reservation in its own favor evidently realized that it was attempting to preserve a hope or the right to explore in an unknown field for things of value which might or might not be found, and to that end it further bound the vendees "not to hold adversely or to permit any other person to hold adversely" to it the rights which were reserved.

As stated in the case of Huie-Hodge Lumbe Co. v. Railroad Lands Co., Ltd., supra, it is unnecessary to determine here what the effect of an unqualified attempt to convey the minerals themselves would have been. Since nothing more than a servitude was conveyed, the same has prescribed because of nonuser for more than 10 years.

Doubtless many transactions have been had on the faith of the case last above cited, and to that extent the decision had become a rule of property. Aside from this, however, we are yet of the opinion that the conclusions reached therein are correct and should be followed.

[5] Plaintiffs complain of the judgment in reconvention for the expenses and expenditures of defendants in developing an oil field upon the property. We are convinced from all the circumstances that a failure to make this allowance would, in effect, permit the plaintiffs to enrich themselves at the expense of the defendants; that equity, fair dealing, and law require that they should make the reimbursement, especially since they stood by and permitted the defendants to make the outlay and incur the expense for their benefit without protest, or at least without resorting to proper legal remedies until oil had been discovered.

For the reasons assigned, the judgment appealed from is affirmed, the costs of this appeal to be borne equally by plaintiffs and defendants.

ST. PAUL, J., concurs in the decree.