ISLAND PETROLEUM CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 3242.

Circuit Court of Appeals, Fourth Circuit.

April 12, 1932.

NORTHCOTT, Circuit Judge, dissenting.

J. Kemp Bartlett, of Baltimore, Md. (William M. Williams and John R. Yates, both of Washington, D. C., on the brief), for petitioner.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key. Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a petition by the Island Petroleum Company, a Delaware corporation, to review a decision of the Board of Tax Appeals. The questions presented by the petition are: (1) Whether petitioner was entitled to file a consolidated income tax return for the year ending April 30, 1920, with four Texas corporations, 60 per cent. of whose stock it owned; and (2), if not, whether it was entitled to deduct from income, as an expense or loss of the year, the sum of $106,416.98, which it advanced to these corporations, and which it contends

that they expended for it as disbursing agents. The board decided both of these questions against petitioner, holding that petitioner was not affiliated with the Texas corporations within the meaning of the statute (Revenue Act 1918, § 240 (a, b), 40 Stat. 1081) and that the amounts advanced to them were loans, which were not ascertained to be worthless until subsequent years.

Petitioner is engaged in oil refining, having its principal office at Baltimore, Md., and its refinery near Pittsburgh, Pa. In 1917 it entered into negotiations, the details of which are unimportant, with the view of securing an adequate supply of crude oil from the Texas oil fields. In 1918 it caused four corporations to be organized under the laws of Texas for the purpose of developing oil fields in four Texas counties. The stock of these corporations was issued fully paid and nonassessable, 60 per cent. of the stock of each being issued to petitioner. The remaining 40 per cent. was issued to two promoters, C. B. Dutton and E. T. Merritt, and the "oil scouts" who secured oil leases for them. This method of corporate organization was adopted to carry out an agreement that Dutton, Merritt, and the oil scouts should have two-fifths of the net profits in each enterprise and petitioner three-fifths thereof. According to this agreement, petitioner was to furnish the funds necessary for leasing and developing the oil properties; Dutton, Merritt, and their associates were to locate and secure leases upon the oil lands; and the net profits of the enterprises were to be divided in the proportions indicated.

Between 1918 and 1922 the Texas corporations were at work endeavoring to locate oil on the lands covered by the leases which they had acquired. Up to January 10, 1922, they had expended $359,018.92, all of which was furnished to them by petitioner. The operations of all the corporations were directed by the same persons and were controlled by the president of petitioner; but accounts were kept showing, as to each corporation, what moneys were expended in its behalf. It was necessary that this be done because of the agreement; for it was only the net profits of the operations that were to be divided among the stockholders, and it is a reasonable conclusion from this that the moneys advanced by petitioner were to be repaid if repayment should become possible. During the tax year in question $106,416.98 was advanced to carry on the operations in which the four corporations were

engaged; and there is nothing to show that at any time during the year petitioner regarded any of the moneys advanced as having been lost. On the contrary, petitioner continued to make advancements until the corporations were dissolved in 1922 and 1924. Only three or four thousand dollars was realized upon the winding up of the corporations, of which a part was used to defray the expenses of dissolution and the remainder was forwarded to petitioner.

The principal question argued before the Board of Tax Appeals, and the one to which the greater portion of the brief of petitioner in this court is devoted, is the question of affiliation. In the light of recent decisions of the Supreme Court of the United States and of this court, however, there is no room for further controversy about this matter. It is not sufficient to authorize affiliation that corporations be, as a matter of fact, subject to the control of the same person or interests. To authorize affiliation, there must be a legally enforceable control of the stock of the corporations by the same interests. "Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute." Handy & Harman v. Burnet, 284 U. S. 136, 52 S. Ct. 51, 53, 76 L. Ed. ——; Peytona Lumber Co. v. Commissioner of Internal Revenue (C. C. A. 4th) 55 F.(2d) 27.

And we do not think that we would be justified in disturbing the finding of the board that "the amounts paid out by the petitioner to or for the Texas corporations were merely advances or loans by the petitioner." It is well settled that findings of fact by the board having reasonable support in the evidence are binding upon us. Finance & Guaranty Co. v. Commissioner of Internal Revenue (C. C. A. 4th) 50 F.(2d) 1061; Van Smith Bldg. Material Co. v. Commissioner of Internal Revenue (C. C. A. 4th) 44 F.(2d) 54; Ox Fibre Brush Co. v. Blair (C. C. A. 4th) 32 F.(2d) 42, 68 A. L. R. 696. And, as stated above, we think it a clear inference from the evidence that the amounts advanced by petitioner to the Texas corporations were to be repaid from the proceeds of the operations in which those corporations were engaged as it was only the net profits of the operations which were to be divided among the stockholders. It is true that the petitioner was to put up the money to carry on the operations and that the minority stockholders were not to be required to put up anything; but petitioner was to lose only if the operations proved unsuccessful. In the event of success it was to receive back the amount it had advanced plus its portion of the net profits. The advances were, therefore, loans which the Texas corporations would repay if successful. If they were unsuccessful, they would have nothing to pay with and the loss would fall upon petitioner.

It is immaterial that there was no express agreement on the part of the Texas corporations to repay the moneys advanced. Not only was such agreement implied in the agreement that only the net profits of the various enterprises were to be divided among the stockholders, but a promise to repay moneys laid out and expended for the use and benefit of another and at his request is implied in law. 2 R. C. L. 776, 777; Scott et al. v. Norton Hardware Co. (C. C. A. 4th) 54 F.(2d) 1047; Emery v. Hobson, 62 Me. 578, 16 Am. Rep. 513. Here the expenditures were made for the use and benefit of the Texas corporations and upon an agreement made in their behalf. And it makes no difference in the result, if we construe the agreement as requiring repayment by the Texas corporations only in the event that their operations should prove successful. A loan is no less a loan because its repayment is made contingent; and a taxpayer has no right to treat it as a loss until the contingency has occurred or its worthlessness has been otherwise determined.

And we think that the board properly held that the loans thus made to the Texas corporations during the tax year in question could not be treated as losses of that year. The futility of the undertakings in which these corporations were engaged had not been ascertained at that time; and for some time thereafter petitioner continued to advance moneys to all of them for the development of the properties upon which they held leases. Not until more than a year later did it, in the case of any of the corporations, abandon the hope of making a success of the enterprise in which it was engaged.

It is argued that, disregarding the corporate organizations as fictions, we should allow the deduction of the moneys advanced on the theory that same were in reality expended by petitioner upon unprofitable ventures during the tax year. These corporate organizations, however, were not fictions but realities. They were created to take care of the interests of the various parties in the enterprises upon which they were entering; and only because these enterprises failed was there a loss by petitioner of the moneys ad-

vanced by it. If they had succeeded, the moneys advanced would have been repaid by the very corporate organizations which we are asked to disregard.

But even if we should disregard the corporate organizations, we do not see that the position of petitioner would be helped. It is true that money spent in drilling a well which turns out to be worthless may, at the election of the taxpayer, be treated either as an expense of the business or as a capital investment. Klein on Federal Income Taxation 717, 718. But the expenditure in behalf of each of the corporations here was under an arrangement by which the amount expended was to be repaid if the venture in which that corporation was engaged should prove successful; and we think that this amounted to treating the advancement as an investment and not as an expense of the business. When the venture failed, petitioner was, of course, entitled to charge off the amount invested therein as a loss; but the venture did not fail until after the expiration of the tax year in question.

Ordinarily, if a worthless well is dug, the money spent in digging it may properly be considered as lost. In this case, however, the money spent in digging worthless wells in behalf of one of the Texas corporations was to be repaid if subsequently the enterprises of that corporation proved successful. The petitioner, in other words, did not bid a final farewell to the money lost in one of the enterprises until the enterprise itself was abandoned. The money advanced was thus in no sense an expense of the business of petitioner, but an investment in an enterprise which it was undertaking; and this investment did not become a loss until the abandonment of the enterprise.

For the reasons stated, we think that the decision of the Board of Tax Appeals should be affirmed.

Affirmed.

NORTHCOTT, Circuit Judge, dissents.