## BLISS v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6225.

Circuit Court of Appeals, Fifth Circuit.
April 20, 1932.

S. L. Herold and S. P. Cousin, both of Shreveport, La., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is one of four cases which involved deficiencies assessed against taxpayers, respectively, the petitioner Abel Bliss, his wife, George W. Wetherbee, and his wife, as results of the disallowance of deductions claimed by the taxpayers, respectively, in their income tax returns for the years 1923 and 1924. The cases being identical except that the petitioners therein were different persons, pursuant to stipulation only the record in this case was printed, it being agreed that the decision in this case would be followed in the other cases. During 1923 and 1924 petitioner and George W. Wetherbee comprised the partnership of Bliss &

Wetherbee, and one-half of each partner's income for each of those years was reported for taxation by his wife under the community property laws of Louisiana.

About the year 1910 Bliss and Wetherbee (herein referred to as the firm) acquired approximately 11,000 acres of land in Louisiana. Prior to November 23, 1921, adverse claims to oil and gas in parts of the lands owned by the firm had been asserted, and R. O. Roy had entered upon some of those lands the mineral rights in which he so claimed, and had proceeded to drill ten wells thereon, seven of which were dry holes, and three of which were producers. On November 23, 1921, the firm employed attorneys to conduct such litigation as should be necessary to determine the right to the oil and gas in and under the lands the mineral rights in which were adversely claimed, and in writing agreed to pay the attorneys as fees 20 per cent. of what might be realized from the mineral rights as a result of the services of the attorneys, the agreement providing that out of all funds arising from contracts made by the firm concerning mineral rights adversely claimed "20 per cent will be set aside in bank to be paid at the time earned under the terms of this contract." During the month of November, 1921, the firm entered into an oil and gas lease with the Gulf Refining Company of Louisiana covering a tract of land, the mineral rights in which were adversely claimed, and entered into an oil and gas lease with the Humble Oil Company covering another tract of land the mineral rights in which were adversely claimed. The Gulf Refining Company agreed to pay for its lease $20,000 "when the lessors' title to the entire tract of land and to the oil, gas and other minerals thereunder had been perfected and the adverse claims of all parties thereto cancelled and removed," and to pay lessors the additional sum of $60,000 out of one-half of the proceeds of the sale of oil, should it drill and produce oil on the property. The Humble Oil Company agreed to pay for its lease $50,000 when the adverse claims "have been judicially decided by the court of last resort to be illegal and the title of Bliss and Wetherbee to the minerals underlying the lands designated in said paragraph 3 above quieted and confirmed"; and it agreed to pay also $162,000 out of one-half of the first oil produced. After Roy had drilled his tenth well, the firm, through the attorneys employed, brought two suits to have it judicially determined that the adverse claims asserted were invalid, each of those suits being an action for slander of

title, otherwise termed by the Louisiana law a jactitation suit. In each of those suits it was adjudged by the Supreme Court of Louisiana in 1923 that the adverse claims asserted were invalid, but that court decided, as to a reconvention claim set up by Roy, that he was entitled to be reimbursed for his entire outlays and expenditures in the drilling of the ten wells, seven of which were dry holes. Wetherbee v. Railroad Lands Co., 153 La. 1059, 97 So. 40; Wetherbee v. Railroad Lands Co., 153 La. 1070, 97 So. 44. After the rendition of those decisions the Gulf Refining Company of Louisiana and the Humble Oil Company in 1923 paid to the firm the cash bonuses agreed upon, and in 1923 and 1924 those companies paid to the firm further sums under the provisions of the contracts relating to the payment of additional bonus out of oil produced. Out of each of the sums so paid to the firm it deducted and paid to its attorneys the proportion stipulated in the above-mentioned contract of employment. The petitioner claimed one-fourth of the amounts so paid as deductions in his income tax returns for years in which the payments were made. The Commissioner of Internal Revenue and the Board of Tax Appeals disallowed those deductions. In 1923, the firm, in accordance with the decision of the Supreme Court of Louisiana, paid to Roy the amount of his outlays and expenditures in drilling the ten wells as above stated. In his income tax return for the year 1923 the petitioner claimed as a deduction from gross income his pro rata part of the amount so paid by the firm to Roy to reimburse him for his expenditures in drilling the dry holes. That deduction was disallowed by the Commissioner and by the Board of Tax Appeals. The disallowance of the deductions was a result of the conclusion that the payments made as above stated by the firm to the attorneys and to Roy were capital expenditures.

█ █ The above-mentioned expenditures for attorney's fees cannot reasonably be regarded as capital investment. They were not payments made in acquiring ownership of lands minerals in or from which were adversely claimed. In making the above-mentioned leases the firm entered into business transactions the object of which was the acquisition of income from oil and gas contained in the leased lands. Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460. The object of the suits brought was the removal of an obstacle to the recovery or realization of income cre-

986

ated by the assertion of adverse claims to it. The payments made to the attorneys were none the less business expenses incidental to the realization of income because the rendition of the services was required, not by the refusal of the lessees to make the payments conditionally stipulated, but to comply with the contract obligation to the lessees to enable them to make such payments without being subjected to risk or liability to a third party by so doing. In deciding, in the case of Kornhauser v. United States, 276 U. S. 145, 48 S. Ct. 219, 220, 72 L. Ed. 505, that a taxpayer was entitled to deduct from his gross income the amount of an attorney's fee paid for services rendered in defeating a claim by another to some of his earnings in his business, the court said: "If the expense had been incurred in an action to recover a fee from a client who refused to pay it, the character of the expenditure as a business expense would not be doubted. In the application of the act we are unable to perceive any real distinction between an expenditure for attorney's fees made to secure payment of the earnings of the business and a like expenditure to retain such earnings after their receipt. One is as directly connected with the business as the other." It seems that as well it may be said that there is no real distinction between an expenditure for attorney's fees made to retain earnings after their receipt and a like expenditure made to enable one to get possession of business income to which he is entitled. The above-mentioned suits brought by the firm did not involve an ordinary attack on the firm's title to land. In such an action for slander of title, in Louisiana law otherwise termed a jactitation suit, the defendant, by setting up title in himself, stands in the position of a plaintiff in a petitory action, and must make out his case on the strength of his own title, and not on the weakness of his adversary's. Dalton v. Wickliffe, 35 La. Ann. 355. The defendants in the suits brought by the firm admitted the firm's ownership of the lands in question. Wetherbee v. Railroad Lands Co., 153 La. 1059, 97 So. 40. The defendants in those suits set up claims, not to title to lands admitted to be owned by the firm, but to rights to minerals therein or extracted therefrom. What was adversely claimed was part of what was or might be produced from the lands when used in business by the firm or its lessees. To treat as an addition to the cost of land the amount of an expenditure made, after ownership was acquired, to enable the owner, his agent or lessee, to possess and use the land for business purposes, undisturbed by intruders or trespassers, would involve a disregard of the difference between the cost of acquiring ownership of property and expenses paid or incurred to protect the owner's right to undisturbed possession and enjoyment of his property, and what it yields or produces, by himself, his agents or lessees. It seems reasonable to treat amounts expended for services rendered in ejecting or excluding trespassers after ownership has been acquired as expenses incident to the ownership of property and the acquisition and enjoyment of income from it, rather than as additions to the capital investment in the property. We conclude that the attorney's fees incurred and paid as above stated were ordinary and necessary business expenses which were deductible from gross income under the provision of section 214 (a) (1) of the Revenue Act of 1921, 42 Stat. 227, 239. Kornhauser v. United States, supra; Lucas v. Wofford (C. C. A.) 49 F.(2d) 1027.

With reference to the claim in reconvention set up by Roy, the Supreme Court of Louisiana said: "Plaintiffs complain of the judgment in reconvention for the expenses and expenditures of defendants in developing an oil field upon the property. We are convinced from all the circumstances that a failure to make this allowance would, in effect, permit the plaintiffs to enrich themselves at the expense of the defendants; that equity, fair dealing, and law require that they should make the reimbursement, especially since they stood by and permitted the defendants to make the outlay and incur the expense for their benefit without protest, or at least without resorting to proper legal remedies until oil had been discovered." Wetherbee v. Railroad Lands Co., 153 La. 1059, 97 So. 40, 43. It is to be inferred that the part of the quoted statement as to the plaintiffs being enriched had reference to the expenditures which resulted in oil producing wells, as plainly it could not have been thought that any one was enriched by the bringing in of dry holes. It fairly appears that the liability of the plaintiffs in the suits for the expenditures made in drilling the dry holes was intended to be put on the ground that, by standing by and permitting those expenditures to be made for their benefit without protest, the plaintiffs impliedly agreed that those expenditures be made for themselves by Roy as their authorized agent. By being required to reimburse Roy for his outlays in drilling the dry holes, the plaintiffs were treated as having author-

ized Roy to do for them oil development work on their land, with the result of becoming obligated to him for the amount expended by him in drilling the dry holes. A regulation adopted under the Revenue Act of 1921, and which was applicable to income taxes for the year 1923, provided: "The cost of drilling nonproductive wells may at the option of the operator be deducted from gross income as an operating expense or charged to capital account returnable through depletion and depreciation as in the case of productive wells." Regulations 45, art. 223. The firm, by making the required reimbursement to Roy for his outlay in drilling the dry holes, was put in the position of one who had himself drilled the dry holes. The amount so paid was a business expense which was deductible from gross income. Harris v. Lucas (C. C. A.) 48 F.(2d) 187. Furthermore, it well may be considered that the firm, in paying for the dry holes in the circumstances disclosed, sustained a business loss, the amount of which was deductible under the provision of section 214 (a) (4) of the Revenue Act of 1921 (42 Stat. 240). It cannot plausibly be denied that the firm sustained a loss in paying the cost of work which resulted in nothing of value, but which was done in a business the carrying on of which for the firm was impliedly authorized by it.

The petition is granted, and the cause is remanded for further proceedings not inconsistent with this opinion.