### REYNOLDS v. McMURRAY.
### No. 576.

Circuit Court of Appeals, Tenth Circuit.

Aug. 5, 1932.

See, also (D. C.) 38 F.(2d) 480.

John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, of Seattle, Wash. (A. D. Walton, U. S. Atty., of-Cheyenne, Wyo., and C. M. Charest, Gen. Counsel, and Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellant.

N. E. Corthell, of Laramie, Wyo. (M. E. Corthell and A. W. McCollough, both of Laramie, Wyo., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

Donald McMurray brought this action to recover alleged over-payments of income taxes, with interest, for the years 1920, 1922, and 1924.

The stipulated facts are as follows: On December 7, 1917, W. M. Armstrong and the Ohio Oil Company owned oil leases on certain lands in Wyoming in the proportion of 40% and 60% respectively. On that date they entered into agreements with respect thereto which provided that the Ohio Company should manage, control, develop, and operate such leases, and should immediately drill a well thereon at its own expense; that after the completion of the first well the Ohio Company should continue to manage, control, develop, and operate the leases and pay all costs incident thereto, and should charge Armstrong's undivided interest with its proportionate part thereof; that it should market the oil and gas produced and account to Armstrong for his proportionate part thereof; that it should be reimbursed by Armstrong from the proceeds derived from the sale of his proportionate part of the oil and gas, to be effected by crediting Armstrong's account with the Ohio Company, on the first of each month, with the proceeds derived from the sales during the month preceding of his proportionate part of the oil and gas; and that it should make monthly remittances to him of his proportionate share of any proceeds remaining after deducting the amounts due it for expenditures made by it for him.

On December 21, 1917, Armstrong assigned an undivided portion of his interest in the leases to Will McMurray. Thereafter the Ohio Company carried an account on its books, in accordance with such agreements, covering Will McMurray's share in the expense of the development and operation of such leases and the revenue therefrom. The latter died intestate on February 3, 1925, and plaintiff is his sole heir at law.

The Commissioner made deficiency assessments against Will McMurray for 1920, 1922, and 1924. His administrator paid such deficiencies under protest, and duly filed claims for refund thereof, which were rejected. Such deficiencies were based wholly upon the income of Will McMurray arising out of the production of oil and gas by the Ohio Company on such leases. The Commissioner, in recomputing the taxes for the years in question, included the entire amount credited to Will McMurray on the books of the Ohio Company in his gross income and allowed deductions for business expense, depletion, and depreciation.

■■ The question presented by this appeal is whether that portion of Will McMurray's share of the receipts from such leases applied to reimburse the Ohio Company for expense of development and operation, less proper deductions, was income to Will McMurray for the years involved, and therefore subject to the tax.

Counsel for plaintiff contend that such amounts were not income to Will McMurray because profits to him were contingent upon the leases producing revenue in excess of the cost of development and operation.

Where one co-owner makes advances for the benefit of the other, to be repaid from earnings from the property before any division of profits is to be made but without personal obligation on the part of the other to repay such advances, thus making them subject to the risks of the business, the co-owners are joint adventurers in the operation of the property. Nelson v. Lindsey, 179 Iowa, 862, 162 N. W. 3.

If the agreements in the instant case could be construed to be a relinquishment of the rights which Armstrong had in such leases in return for a percentage in the net profit, then plaintiff's contention would have merit. But such was not the effect of the agreements. They provided that the Ohio Company should account to Armstrong not for net proceeds but for his proportionate part of the oil and gas produced and sold; that it should charge Armstrong's undivided interest with its proportionate part of the expenses; and that it should be reimbursed out of the proceeds derived from the sale of his proportionate part of the oil and gas. The purpose of the agreements was to facilitate development; not to transfer title. The title of the respective owners remained as before.

It follows that Armstrong, the Ohio Company, and Will McMurray were co-owners of the leases and joint adventurers in the operation of such leases, and the income produced therefrom was the income of all. Ferry Market, Inc., v. Commissioner, 5 B. T. A. 167; Dickey v. Commissioner, 14 B. T. A. 1295; Glenmore Securities Corp. v. Commissioner, 24 B. T. A. 697.

While the obligations of Armstrong and Will McMurray, as his assignee, to reimburse the Ohio Company were contingent and limited to payment from a particular source, they became certain and fixed to the extent of the full amounts charged against them when the receipts from the leases equaled the expenses incurred by the Ohio Company.

A part of the advances made and expended by the Ohio Company under the agreements was business expenses and a part was capital expenditures. It is true that, had development of the leases not resulted in commercial wells, there would have been no capital improvements in fact, no obligation on the part of Will McMurray to pay therefor, and no income to him (Bliss v. Commissioner (C. C. A. 5) 57 F.(2d) 984); but, when such development did result in commercial wells, there was a capital improvement, forty per cent. of which accrued to Armstrong and Will McMurray, and they derived income from the leases as a result thereof.

The agreements did not constitute a present transfer of an interest in the leases. They authorized the Ohio Company to receive and apply to its claim moneys accruing to Armstrong and Will McMurray. They were agreements to pay in the future from a particular source.

■ Under each of the several applicable Revenue Acts the tax is imposed by force of the statute itself (United States v. Nashville, C. & St. L. Ry. (C. C. A. 6) 249 F. 678) immediately when the income is derived, actually or constructively, and the tax attaches before such income passes from the recipient by a transfer to take effect in the future. Rensselaer & S. R. Co. v. Irwin (C. C. A. 2) 249 F. 726; Northern R. Co. of New Jersey v. Lowe (C. C. A. 2) 250 F. 856; Hamilton v. Kentucky & I. T. R. Co. (C. C. A. 6) 289 F. 20; Leydig v. Commissioner (C. C. A. 10) 43 F.(2d) 494; Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731. See, also, Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916.

■ Counsel for plaintiff further contend that the amounts of Will McMurray's share applied to reimburse the Ohio Company were not income to him because they were not re-

ceived by him or placed at his disposal. But it was not necessary that his share of the proceeds be paid to him personally to render it subject to the tax. Profits which would constitute income if paid directly to a person are also income to him if paid, pursuant to his agreement, to a third person to discharge his obligation to such third person. Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; United States v. Boston & Maine R. Co., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929; Blalock v. Georgia R. & F. Co. (C. C. A.) 246 F. 387; Rensselaer & S. R. Co. v. Irwin, supra; Washington Market Co. v. Commissioner, 25 B. T. A. 576. The Ohio Company acted as Will McMurray's agent in applying to his account the proceeds from the sales of his share of the oil and gas produced (Ferry Market, Inc., v. Commissioner, supra), and thereby discharged, in accordance with such agreements, his obligations to it. Will McMurray and Armstrong derived benefits therefrom in that the amounts credited on their accounts paid in part for capital expenditures, which resulted in the development of such leases and increased the value of their interests therein.

We therefore conclude that the method used by the Commissioner in arriving at the tax liability was correct. We do not however undertake to pass on the correctness of the items. The issues as to them will have to be determined by the trial court.

The decree is reversed and remanded with instructions to grant the Collector a new trial.

McDERMOTT, Circuit Judge (concurring in the result).

There must be income before there can be a tax. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. The quality of the interest owned by the taxpayer may help in determining whether there is income; but the tax is laid, not on property, but on income. If there is income, the tax cannot be defeated by directions to pay to others; nor is it escaped because it is not reduced to possession. During 1920 the wells here involved produced some oil, but all of the proceeds thereof were applied by the Ohio Oil Company to the cost of development, as the contract provided. Were such proceeds income to Armstrong, or McMurray, his assignee? The Board of Tax Appeals held that the proceeds of oil, applied to the payment of the cost of development, were not income to Armstrong. Arm-

strong v. Commissioner, 25 B. T. A. 928. The appellant disputes the correctness of this decision.

The proceeds of the oil are not constructive income, for such has been defined by the Regulations as income which has been "credited to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made." Reg. 45, Art. 53, approved January 28, 1921. The limitation upon payment of the money here involved was absolute.

Appellant then contends that the proceeds of the oil taxed were expended on a capital improvement. The Commissioner deducted from the proceeds the expenses of operation, but declined to deduct capital expenditures. The brief states: "In the instant case the capital expenditures are the costs of development of the property, the drilling of the oil well which is analogous to the construction of a building on the ground."

If the premise is sound, the conclusion follows. If a farm is rented on a share contract by which expenses of harvesting are deducted before division, the landlord receives no income if the expenses exceed the proceeds from the crop; if there is an excess, and the landlord directs the tenant, either in the original contract or later, to build a house with the landlord's share of the net profit, the net profit is income to the landlord. But is the analogy between an unprofitable oil well and a building a fair one? A building is of value; an oil well that does not pay its own way is but a hole in the ground. The value of recoverable equipment is generally slight, and in this case, on account of the location of the field, is negligible. The Commissioner has long recognized this. Reg. 45, Art. 223 (1921) provides that the cost of drilling nonproductive wells may be charged to expense, and not to capital account, at the option of the taxpayer. The Fifth Circuit Court of Appeals has held that "plainly it could not have been thought that any one was enriched by the bringing in of dry holes." Bliss v. Commissioner, 57 F.(2d) 984, 986. The Fourth Circuit Court of Appeals has held that "if a worthless well is dug, the money spent in digging it may properly be considered as lost." Island Petroleum Co. v. Commissioner, 57 F.(2d) 992, 995. An abandoned oil well is not a capital asset; it is a nuisance.

It is argued that while the well was an unprofitable one in 1920, it became profitable

in 1924. No one in 1920 knew whether the well would ever pay out. The government, in this case, properly argues that "Income taxes are based entirely upon the receipts and disbursements (whether on a cash or accrual basis) for the twelve months' period of the taxpayer's accounting." Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383, sustains the point. When the taxpayer made his return for 1920, in 1921, this well could not be considered an improvement; he did not know, and no one knew until 1924, whether it ever would be of value. Oil wells are nursed along for many years, with the vain hope that they will eventually pay out. At the close of the taxable year, an oil well has not paid out; neither is it abandoned. Must it be treated as a productive well? Such a rule may be grossly unfair to the taxpayer, by requiring him to pay a tax on a profit he never realizes. The other rule is not productive of mischief to the government, for if the capital expenditure is charged to expense, it cannot thereafter be recouped through depreciation.

The rule adopted by the Commissioner here seems to be opposed to the principle announced in Burnet v. Logan, 283 U. S. 404, 413, 51 S. Ct. 550, 552, 75 L. Ed. 1143. In that case, a part of the purchase price of stock was a royalty to be paid on ore as it was recovered. It was held that such royalty was not income until it was paid. The court said: "When the profit, if any, is actually realized, the taxpayer will be required to respond. The consideration for the sale was $2,200,000 in cash and the promise of future money payments wholly contingent upon facts and circumstances not possible to foretell with anything like fair certainty. The promise was in no proper sense equivalent to cash. It had no ascertainable fair market value. The transaction was not a closed one. Respondent might never recoup her capital investment from payments only conditionally promised."

And so here. In 1920, no one could possibly foretell whether the well would ever pay out. If it did not, appellee would have been taxed for income he never could and never did receive; he would have made a capital investment which he never could recoup; he would have paid the government $36,612.11 in taxes on an income represented entirely by a dry hole.

The government assumes, in its brief, that Armstrong was personally obligated to pay his share of the expense of development. If he was, the proceeds of the oil are taxable income, subject to the option conferred by Reg. 45, Art. 223, supra. But was Armstrong so obligated? The charges and credits appearing on the books of the Ohio Oil Company are evidentiary, but not conclusive. Lucas v. North Texas Co., 281 U. S. 11, 13, 50 S. Ct. 184, 74 L. Ed. 668. The contract provides, in one place, that the Oil Company will "pay" the cost of the development; in another place it describes the cost as "money so advanced." It provides for reimbursement of such advances out of the oil produced, but does not provide that it must look solely to such proceeds for reimbursement. There is no provision that Armstrong shall be personally liable for any part of the development costs; nor is there a provision that he shall be held harmless therefrom. The controlling clause as to Armstrong's liability, as I read the contract, is the one which provides that the Oil Company *"shall charge the undivided forty per cent interest"* of Armstrong with 40 per cent of the cost of development. The "forty per cent interest" refers to the leases which were the subject matter of the development contract. Armstrong's interest in the leases was of value. If this contract imposed a liability against that interest, which liability was discharged by the proceeds of the oil, then it was taxable income.

If neither Armstrong nor his property were liable for any part of the cost of development; if he owned an ordinary working interest which entitled him to share only in net profits, then he receives no income until there are net profits. I am in considerable doubt as to the intention of the parties as expressed by this contract, and as illumined by their actions under it. I doubt if the parties intended that Armstrong should be personally liable for any part of the cost of development; but I am of the opinion that Armstrong's interest in the leases was charged with his share of the cost of development. For this reason, but with considerable misgiving, I concur in the result.