A. HARRIS & CO. v. LUCAS, Commissioner
of Internal Revenue.

No. 5940.

Circuit Court of Appeals, Fifth Circuit.
March 30, 1931.

Murphy W. Townsend, of Dallas, Tex.,
for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and
C. M. Charest, Gen. Counsel, Bureau of In-
ternal Revenue, and Allin H. Pierce, Sp.
Atty., Bureau of Internal Revenue, both of
Washington, D. C., A. H. Conner, Sp. Asst.
Atty. Gen., J. Louis Monarch and Norman
D. Keller, Sp. Assts. Atty. Gen. (J. K. Polk,
Sp. Atty., Bureau of Internal Revenue, of
Washington, D. C., on the brief), for re-
spondent.

Before BRYAN and FOSTER, Circuit
Judges, and HUTCHESON, District Judge.

FOSTER, Circuit Judge.

In this case there is no dispute as to the
material facts. It appears that petitioner is
a Texas corporation operating a department
store in Dallas, Tex., selling at retail dry
goods, dresses, shoes, and other articles usual-
ly handled by a retail store of that class.
In 1916, in order to avoid bankruptcy, it
effected a compromise with its creditors, oth-
er than the banks, whereby 50 cents on the
dollar was accepted by them in full settle-
ment of claims aggregating over $130,000.
In making its returns for 1916, petitioner
accounted for the balance of the obligations
relinquished by its creditors, $65,699.70, as
profits, and paid taxes accordingly. As a
result of the compromise, the credit of pe-
titioner was practically destroyed, it could
not borrow money, and it was forced to buy
largely for cash. In order to induce its
customers to pay cash, it adopted the plan
of giving certificates, exchangeable for tickets
to moving picture theaters, as premiums.
This cost petitioner over $10,000 in 1917,
over $15,000 in 1918, over $27,000 in 1919,
and over $41,000 in 1920. These expenditures
were allowed to be deducted as expenses in
making returns for those years. Notwith-
standing the unusual expedient of giving
motion picture tickets as premiums, petition-
er soon realized that it could not continue to
do business profitably unless its credit was
restored. It was advised by its bankers that
it could not hope to re-establish its credit
until it paid its former creditors an amount
equal to the debts relinquished by them in
1916. Petitioner agreed to pay these

BRYAN, Circuit Judge, dissenting.

amounts, and voluntarily paid $31,196.10 in 1920, $15,481.37 in 1921, and $15,241.17 in 1922. The first payment resulted in immediate and complete restoration of petitioner's credit, favorable ratings, theretofore denied, were given by the commercial agencies, and petitioner was again able to borrow money from banks. Thereafter the giving of moving picture certificates was discontinued.

Petitioner sought to deduct the amounts of its said payments to its creditors as expenses of doing business, but they were disallowed by the Commissioner and additional taxes were assessed. On appeal to the Board of Tax Appeals, the ruling of the Commissioner was affirmed on the ground that the payments did not constitute expenses at all, but were an investment of capital. 16 B. T. A. 705.

The Revenue Acts of 1918 and 1921, 40 Stat. 1077 and 42 Stat. 254 (and other acts), section 234, provide that in computing the income of a corporation there shall be allowed as deductible "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *"

■ It is evident that the words "ordinary" and "necessary" in the statute are not used conjunctively, and are not to be construed as requiring that an expense of a business to be deductible must be both ordinary and necessary in a narrow, technical sense. On the contrary, it is clear that Congress intended the statute to be broadly construed to facilitate business generally, so that any necessary expense, not actually a capital investment, incurred in good faith in a particular business, is to be considered an ordinary expense of that business. This in effect is the construction given the statute by the Treasury Department and the courts.

■ While the Treasury Department has held as a general rule that only expenditures commonly recognized as operating expenses are deductible, the rule has been applied with great liberality, and practically any reasonable expenditure that has benefited the business has been allowed to be deducted as an expense. For instance, taxpayers have been allowed to deduct a bonus paid for the delivery of a steamship at a date earlier than that contracted for; an amount paid to secure the cancellation of a prior lease in order to secure immediate possession of property purchased from a tenant in possession; an amount expended on trading stamps to promote business; amounts spent by traveling salesmen for treating and entertaining prospective customers; and various other unusual expenses. See Holmes Federal Taxes (1923 Ed.) pp. 716–726, and rulings cited.

The Board of Tax Appeals has been equally liberal, and has allowed deductions for tickets to entertainments purchased from customers to promote good will (McQuade's Appeal, 4 B. T. A. 837); the cost of operating a yacht used for the purpose of inducing prospective customers to visit the owner's plant (Dickinson v. Commissioner, 8 B. T. A. 722); an amount expended for physical training by an actor (Hutchison v. Commissioner, 13 B. T. A. 1187); amounts paid by a brokerage firm for the purpose of securing evidence with which to suppress bucket shops (Pierce v. Commissioner, 18 B. T. A. 447); an amount contributed towards repairing and enlarging a church attended by the taxpayer's employees (Poinsett Mills' Appeal, 1 B. T. A. 6); a contribution to assist in the erection and equipment of a school building attended by the children of the taxpayer's employees (Holt Granite Mills Co's. Appeal, 1 B. T. A. 1246); sums paid into a trust fund for pensioning employees (Hibbard, Spencer, Bartlett & Co. v. Commissioner, 5 B. T. A. 464); a contribution by a manufacturing company to a chamber of commerce to be used for advertising a city (Hirsch-Weis Mfg. Co. v. Commissioner, 14 B. T. A. 796); a sum paid to a partner to bring about an early dissolution of the partnership (Aitkin v. Commissioner, 12 B. T. A. 692); an amount of $37,000 paid by a jockey club to retire a note which it was under no obligation to pay, payment being compelled by the city under threat of revoking the jockey club's permit to conduct racing (Louisiana Jockey Club, Inc. v. Commissioner, 13 B. T. A. 752).

In American Rolling Mill Co. v. Commissioner of Internal Revenue (C. C. A.) 41 F. (2d) 314, it appeared that the company agreed to contribute $360,000 to a fund to be distributed among different civic activities of Middletown, Ohio, such as the American Legion, Boy Scouts, Community Building, Y. M. C. A., etc. The company was allowed to deduct these as ordinary and necessary expenses, on the theory that it tended to promote the welfare work of the company, which employed about one-half the wage earners of Middletown, and tended to prevent strikes and other dissatisfaction.

In Lucas, Commissioner, v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733, the company in 1920 paid its president and treasurer $24,000 each as extra compensation for services performed in prior

years. The Supreme Court held that the payments were deductible in the year 1920.

■ Of course, each case depends for decision upon its own facts, and it would be impossible to formulate a uniform rule to govern all cases. Generally speaking, business men should be free to exercise their ingenuity in devising methods of increasing business. This redounds to the benefit of the government by creating more taxable income. Considering the above-stated examples, it would seem clear by analogy that petitioner was entitled to deduct the amounts paid to its former creditors. It was under no legal obligation to make the payments, and they were made entirely to promote the business by restoring its credit with the wholesalers from whom it purchased goods.

■ It is argued, however, on behalf of the respondent, that the expenditures were in the nature of the purchase of good will, the benefit of which would accrue over a period of years, and that good will is a capital asset. Good will is an asset that adds to the value of a going business and may pass to a purchaser, even though the seller be otherwise insolvent, to remain until destroyed by the purchaser's own conduct. Good will consists largely of a reputation for competence, honesty, and fair dealing, but its value is in attracting customers and not in securing credit. The establishment of credit to purchase does not at all guarantee that it will continue over a period of years. A man's credit may be firmly established to-day and entirely destroyed to-morrow because of his changed financial condition or because of the discovery of traits of character destructive of confidence. That the proprietor of an established business has good credit with those from whom he buys adds nothing to the value of the business to one intending to purchase it. After the sale, the credit to be extended to the business will depend entirely upon the net worth and the reputation of the purchaser, the then proprietor.

It would be entirely equitable to allow petitioner to deduct these payments in arriving at net income for the taxable years in which they were made, as it had already paid taxes on the same amounts as profits in the year in which the compromise was made. However, it is not necessary to rely upon equitable principles in deciding the case. It is perfectly plain that the payments did not constitute capital investment. On the contrary, the business was deprived of cash assets, and nothing was added to its saleable value. The payments may be classed as advertising expenditures as they secured credit

not only from those to whom made but from the trade in general. They might be classed as bonuses paid to secure credit, the same as paying an indorser on a note for his signature, a custom at one time in vogue. But no matter how classed, it is certain that they were necessary to preserve and continue the business. Under the circumstances, the payments were reasonable, and they should be held to be deductible in the year in which paid.

The petition is allowed. The judgment of the Board of Tax Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BRYAN, Circuit Judge, dissents.