## BRAWNER v. BURNET, Com'r of Internal Revenue.

### No. 5583.

Court of Appeals of the District of Columbia.

Argued Dec. 6, 1932.

Decided Jan. 9, 1933.

Roger J. Whiteford and Robert P. Smith, both of Washington, D. C., for appellant.

C. M. Charest, of Washington, D. C., G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, F. M. Thompson, and Francis H. Horan, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

The question presented by this case is whether certain sums paid by a surviving partner in settlement of a suit brought by the wife of his deceased partner, asserting a claim to the assets of the partnership, and for attorney's fees in connection therewith, may be deducted from gross income as ordinary and necessary expenses incurred in carrying on a trade or business, within the meaning of section 214 (a) of the Revenue Act of 1921 (42 Stat. 239).

It appears that prior to the year 1921 George M. Oyster, Jr., was engaged in the dairy business in the District of Columbia and neighboring territory, under the tradename of "Chestnut Farms Dairy." On January 15, 1921, Oyster was married to Cecile R. Oyster. On March 17 of the same year appellant became a partner with Oyster in the dairy business, and on April 24, following, Oyster departed this life testate and without issue.

By the terms of the partnership agreement entered into by Oyster and appellant, Oyster sold to appellant a 45 per cent. undivided interest in the business including all of its assets both real and personal, while Oyster retained the ownership of the remaining 55 per cent. It was stipulated in the contract that upon the death of either of the partners the surviving partner should have the right to purchase the interest of the deceased partner in the partnership including its good will by paying to the representatives of the deceased partner's estate the value thereof as fixed by the last inventory of the partnership assets prior to the death of the deceased partner. On August 3, 1921, appellant as surviving partner elected to purchase the interest of the deceased partner in the business as permitted by the contract. He then paid to the executor the aggregate sum of $113,178.75 as the consideration computed according to the terms of the contract.

On December 8, 1921, the widow, Cecile R. Oyster, filed a bill of complaint in the Supreme Court of the District of Columbia against appellant and Oyster's executor alleging that at the time of the execution of the partnership agreement Oyster was in failing health and lacked mental capacity; that the agreement was executed under undue influence and coercion by appellant to deprive her of her property rights as Oyster's widow; that appellant did not pay full value for the 45 per cent. interest in the business which he purchased from Oyster; that the inventory taken by the executor did not disclose all of the assets and undervalued the estate; that she had refused to accept the provisions made for her in the will of her deceased husband, and sued to enforce her rights under the law. The prayers were that the articles of partnership be declared null and void; that the sale of the partnership business by the executor be set aside; that a temporary restraining order and injunction be granted preventing appellant from disposing of any of the assets of the estate of the decedent; that a receiver be appointed to operate the dairy business; that a general accounting be had; and that plaintiff be granted her lawful share of the real and personal estate of decedent.

Appellant answered denying the charges of undue influence, lack of mental capacity, and insufficiency of consideration in respect to the contract. Appellant, however, feared that a receiver might be appointed in the case and that such appointment, if made, would alarm the creditors of the business, and prevent appellant from obtaining new capital for needed machinery; and furthermore that due to the congestion of the court dockets the trial of the case might be long delayed. Accordingly a compromise agreement was reached in the year 1923 whereby the suit was settled by the payment of $95,000 by appellant to the widow. Appellant also paid the sum of $14,889.71 as attorneys' fees and expenses in connection with the litigation.

In preparing his income tax return for the year 1923 appellant deducted the aggregate amount of these expenditures, to wit $109,-889.71, from his gross income, upon the claim that the amounts were paid as ordinary and necessary expenses during the taxable year in carrying on his trade or business. The Commissioner of Internal Revenue refused to allow any deduction on account of these payments and this decision was sustained by the Board of Tax Appeals and is now before this court for review.

The Revenue Act of 1921, c. 136, § 214 (a) (1), 42 Stat. 227, 239, reads in part as follows:

"Sec. 214. (a) That in computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * * *"

Treasury Regulations 62, article 293, reads in part as follows: "Article 293. Capital ex-

penditures. * * * The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. * * * "

In our opinion the contention of the appellant cannot be sustained. Only such deductions as are authorized by statute are permitted. The expenditures now in question were made in the compromise of a case which did not relate to the ordinary management or control of the business in which appellant was then engaged, which was the buying and selling of milk, but related solely to the title of appellant to the assets of the business. The purpose for which payment was made to the widow was to secure to the appellant the proprietary interest in the business. This was a capital expense and was not deductible.

In Hutchings v. Burnet, Commissioner, 61 App. D. C. 109, 58 F.(2d) 514, we held against the claim of a taxpayer for a deduction based upon an attorney's fee paid for services in a suit to defend the taxpayer's title to certain ore lands. We there pointed out that the fee in question was not paid for services rendered in connection with the operation of the property, but only in defense of the taxpayer's title to the property. It was held that under such circumstances the cost of defending the title did not constitute a deductible expense under the statute, citing Commissioner v. Field (C. C. A.) 42 F.(2d) 820. Again in Williams v. Burnet, 61 App. D. C. 181, 59 F.(2d) 357, where the taxpayers sought to deduct expenses paid in connection with the prosecution of their claim for compensation for land condemned by a municipality, we held the expenses to be capital expenditures and not deductible. In Murphy Oil Co. v. Burnet (C. C. A.) 55 F.(2d) 17, 26, suit was brought by the administratrix of a vendor of property against the taxpayer as vendee, alleging that the taxpayer had acquired the property by fraudulent means. It was held that an amount paid in settlement of the suit, and likewise attorneys' fees paid in connection with the litigation, were not allowable as deductions inasmuch as they represented cost of defending the taxpayer's title to the property, and were not ordinary and necessary expenses of the taxpayer's business. In Newark Milk & Cream Co. v. Commissioner (C. C. A.) 34 F.(2d) 854, deduction was refused for money paid by a corporation to a former stockholder to make up a fixed return guaranteed to former stockholders who dismissed litigation against the corporation in exchange for such payment. The court decisions in relation to this question are very numerous, and it seems unnecessary for us to refer to them at length. We are satisfied that the payments made in the present case for which deductions are claimed were not allowable under section 214, supra.

The decision of the Board of Tax Appeals is therefore affirmed.