## FARMER et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2380.

Circuit Court of Appeals, Tenth Circuit.
March 11, 1942.

Scott P. Crampton, of Washington, D. C. (Geo. E. H. Goodner, of Washington, D.C., on the brief), for petitioners.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief,) for respondent.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Petitioners maintain this action as trustees in liquidation of the Central Material & Supply Company. The question is whether the Commissioner and the Board of Tax Appeals erred in disallowing in petitioners' 1935 income tax return a claimed deduction of $22,866.13 on account of a bad debt, and a further deduction of $10,804, attorneys' fees, as an ordinary business expense.[1]

The Central Material & Supply Company[2] and the Western Paving Company[3] were both subsidiaries of the Harden Mortgage Loan Company.[4] The facts found by the Board establish that on December 31, 1935, there was due the Supply Company on open account from the Paving Company the sum of $22,866.13. It was a running account and had accumulated between 1929 and 1935. Efforts to collect the account during 1935 had been unavailing. The possibility of realizing on the account had been studied by four of the Supply Company's officials and by an independent auditor, all of whom were in a position to know the financial condition of the Paving Company. They made an analysis of its assets and liabilities. The only asset of any consequence that the Paving Company had was an account due it from the Parent Company. It had attempted to collect this account, but was unable to do so because all of the assets and income of the Parent Company had been pledged prior to 1929 to secure a bank loan. The Parent Company was itself in a distressed financial condition. The officials of the Supply Company and the independent auditor agreed that the debt was worthless and should be charged off. No portion of the debt has since been collected. The Board concluded that petitioners had failed to establish facts sufficient to enable it to form an independent opinion as to the worthlessness of the debt in question.

The statute prescribes no method for ascertaining the worthlessness of an account. It simply provides that debts ascertained to be worthless may be charged off. It follows, therefore, that the taxpayer in the first instance is made the judge of the worthlessness of a debt. Selden v. Heiner, D.C.Pa., 12 F.2d 474; Helvering v. Ames, 8 Cir., 71 F.2d 939; Sabath v. Commissioner, 7 Cir., 100 F.2d 569.

A determination by the Commissioner of Internal Revenue is presumptively correct and stands until overcome by substantial evidence. Pittsburgh Hotels Co. v. Commissioner, 3 Cir., 43 F.2d 345; Quinn v. Commissioner, 5 Cir., 111 F.2d 372. When the Commissioner disallowed the deductions, the burden of overthrowing his decision by substantial evidence therefore rested upon the petitioners and remained with them throughout the proceedings before the Board.

Courts will not weigh evidence nor will they substitute their opinion for that of the Board where there is a conflict in the evidence and the findings of the Board are sustained by substantial evidence. But where there is no conflict in the evidence, the legal conclusions to be drawn therefrom present questions of law, and we will inquire to ascertain whether the undisputed facts sustain the conclusions of the Board.

The evidence upon which petitioners rely consists of more than opinions and conclusions, as the Board found. True, the four officers and the independent auditor testified that in their opinion the account was worthless. Their opinion was, however, based upon a careful audit and examination of the books, accounts and affairs of the debtor. The evidence further established that this was a running account that had accumulated over a number of years; that the only asset the debtor had was the claim it held against the Parent Company; that all of the assets and income of the Par-

---

[1] Revenue Act of 1934, c. 277, 48 Stat. 680, 688, 26 U.S.C.A. Int.Rev.Acts, pages 671, 673:

"§ 23. Deductions from Gross Income.

"In computing net income there shall be allowed as deductions:

* * * * * * *

"(k) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts);

* * * *"

[2] Herein called the Supply Company.

[3] Herein called the Paving Company.

[4] Herein called the Parent Company.

ent Company had been pledged prior to 1929 to banks to secure loans of the Parent Company and that it was in a bad way financially. Failure to bring the books of the debtor before the Board for examination goes only to the weight to be accorded the testimony of the officers and the independent auditor. It does not destroy its competency. Petitioners were not required to establish beyond the possibility of a doubt that nothing would ever be realized from the account. The law does not contemplate or require that. In the absence of any conflict in the evidence, we are of the opinion that petitioners met the burden which was theirs to overthrow the presumption of correctness which attaches to the Commissioner's finding and that it was error for the Board to disallow the deduction of the bad debt.

The Paving Company gave an oil and gas lease on some real estate it owned, for a consideration of one-eighth royalty in any oil or gas produced therefrom. Subsequent thereto the Paving Company, for a further consideration, received an additional overriding royalty of one-fourth of the remaining seven-eighths interest in any oil and gas produced under the lease. On September 13, 1930, for a valuable consideration, the Paving Company assigned all its interest in the lease to the Supply Company. In May, 1932, two suits were instituted against petitioners, the Paving Company, and others, claiming an interest in any oil and gas under the leased premises. The plaintiffs in each suit attacked the lessor's title to the land and claimed an interest in the oil and gas that petitioners were receiving under their assignment of the lessor's interest. The suits were defended and the claims of the plaintiff were held to be groundless, and petitioners' title was established. Petitioners' total cost of resisting this litigation was $10,804. They sought to deduct this amount as an ordinary business expense and have appealed from a decision disallowing the claim.

Art. 24-2 of Treasury Regulation 86, provides that: "The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense."

This regulation finds general support in the decisions of the courts. The authorities quite generally hold that expenditures made in defense of a title upon which depends the right to receive oil and gas royalty payments are capital expenditures and not deductible as ordinary business expenses. Croker v. Helvering, 67 App. D.C. 226, 91 F.2d 299; Murphy Oil Co. v. Burnet, 9 Cir., 55 F.2d 17, 26; Blackwell Oil & Gas Co. v. Commissioner, 10 Cir., 60 F.2d 257. Petitioners did more than litigate the right to receive oil royalty payments. The title to the oil and gas lease under which they received these payments depended upon the title to the land. Without title to the land they had nothing. It was therefore necessary for them to defend and establish the title to the land in order to retain their interest in the oil and gas. The decision of the Commissioner and of the Board in this respect is approved.

Reversed and remanded, with directions to compute the tax in accordance with the views expressed herein.