## SCHWABACHER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9942.

Circuit Court of Appeals, Ninth Circuit.

Dec. 12, 1942.

Rehearing Denied Feb. 11, 1943.

Willard L. Ellis, of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Arthur A. Armstrong, and Carleton Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner seeks a review of an order of the Board of Tax Appeals,[1] hereafter called Board, sustaining, in part, a tax deficiency for the calendar year 1936, determined against petitioner by the Commissioner of Internal Revenue, hereafter called Commissioner.

▇ Petitioner is the wife of a partner, one of the several partners of the stock-brokering partnership doing a stock brokerage business under the name of Schwabacher & Co., hereafter called the partnership. Under the California law controlling the matrimonium of petitioner and her husband, she has a community interest in her husband's income from the partnership and so reported it to the Commissioner. She is here regarded as if one of the partners.

The Commissioner disallowed a deduction as an ordinary and necessary business expense the expenditures of the partnership in procuring for its benefit the transfer of a membership or seat in the New York Stock Exchange, hereafter called Exchange, from the estate of a deceased partner to a new partner. The Commissioner and the Board determined the interest of the partnership in the seat or membership in the Exchange as a capital asset, and the expenditure capital in nature and not deductible as ordinary business expense.

Under the rules of the Exchange fixing the terms of such membership, it may be owned only by an individual.[2]

One Ehrich owned such a seat. He was one of the partners of the partnership. Ehrich transferred to the partnership his "beneficial interest" in the seat to the partnership and agreed with the partnership "that I will transfer my membership or seat on the New York Stock Exchange to you or your nominee upon demand." The partnership nominated one Seggerman as such transferee and demanded that Ehrich make the transfer. He executed the documents of transfer, which were filed with the Exchange.

The next day, and before the Exchange could elect Seggerman to membership, Ehrich committed suicide. The Exchange refused to consummate the transaction and required the execution of documents, similar to those executed by Ehrich, to be executed by the executors (later succeeded by an administrator) of the estate of Ehrich.

---

[1] Now known as the Tax Court of the United States. Revenue Act of 1942, section 504, 26 U.S.C.A. Int.Rev.Code, § 1100.

[2] "Membership in the Exchange is a privilege or franchise extended only to an individual and is transferable only with the approval of the Committee on Admissions." Section G, Rules New York Stock Exchange.

518

It appears that prior to Ehrich's attempted transfer, he had attempted to pledge his Exchange seat to secure his indebtedness to two creditors in the amount of $10,141.67, and the pledgees filed their claims with the Exchange. The executors refused to execute the documents of transfer and a suit to compel their execution was brought by the partners against the executors and the Exchange.

The defendants joined issue by their answers. A compromise was effected with an administrator, successor to the executors, whereby, among other matters, $25,000 was paid by the partnership to the Exchange, as stakeholder, to retain a certain portion against the claims of the pledgees of the seat and pay over the balance to the administrator. The administrator executed the documents required by the Exchange and the Exchange elected Seggerman to its membership. In addition to the $25,000, the partnership paid $8,540.08 in attorneys' fees for advice as to how to secure the transfer of the seat and for its representation in the litigation and settlement and for disbursements in connection with such services to the partnership.

The Exchange rules provide that a partnership of which one of its general partners is an Exchange member is a "member firm * * * having its business in listed securities done at members' rates." Section G, Exchange rules. Both Ehrich and Seggerman were general partners within the rules of the Exchange. Such a member partner is "the sole owner of his membership," but "contributes the use of his membership to the firm." While such "an Exchange member cannot purport to make his membership itself an asset of the firm, * * * the proceeds of his membership shall be an asset of the partnership."[3]

█ It is apparent that the partner member holds the proceeds of his Exchange transactions for the firm as trustee for the firm.[4]

█ Since petitioner seeks a deduction from gross income, our consideration of her contention is controlled by the rule that every such deduction is allowed as "a matter of legislative grace" and "only as there is clear provision therefor can any particular deduction be allowed," and "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172.

Appellant claims the expenditures are ordinary and necessary expenses in carrying on the partnership business because they were made for the purpose "to obtain the use of the Stock Exchange seat which the firm already owned."

The question is whether payments made for the continued use or possession of this equitable property of the firm for the purposes of its business, constitute a business deduction within Sec. 23(a) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 827. We think that this is not a "clear provision" for such a deduction but, on the contrary, one of which appellant has not shown that she "comes within its terms." That section provides as follows:

"§ 23.   Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

"(a)   Expenses.   All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property

---

[3] "Although, by reason of the nature of an Exchange Membership, the Exchange member partner is the sole owner of his membership, the partnership articles must provide that a general partner who is a member of the Exchange contributes the use of his membership to the firm and may provide that he shall not sell, transfer or encumber his membership while he remains a partner. Furthermore, while an Exchange member cannot purport to make his membership itself an asset of the firm, each general partner who is a member of the Exchange must, in addition to any other provision in the partnership articles, specifically agree that, in so far as may be necessary for the protection of the creditors of the firm, and subject to the Constitution and Rules of the Exchange, the proceeds of his membership shall be an asset of the partnership." Sec. G, Rules New York Stock Exchange.

[4] A Stock Exchange seat has been held to be a saleable capital asset of a brokerage partnership for federal income tax purposes. McClellan v. Commissioner, 2 Cir., 117 F.2d 988. Cf. Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481.

to which the taxpayer has not taken or is not taking title or in which he has no equity."

The statute's specific requirement for deducting payments to procure the continued use of property is that it must be property of which the taxpayer has no legal title and no equity. Here the partnership had an equitable title and appellant's frank contention is that the payments were to obtain its use.

■ The Treasury Regulations interpreting Sec. 23(a) are in accord. The pertinent portions of Treasury Regulations 94, Article 23(a)-1 and Article 24-2[5] are:

Art. 23(a)-1. Business expenses.—Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, except * * *. As to items not deductible under any provision of section 23, see section 24.

Art. 24-2. Capital expenditures.—* * * The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. * * *."

■ These Regulations distinguishing capital from business expenditures make it clear that the expenditures to transfer the Exchange seat from the estate of the deceased partner Ehrich to partner Seggerman are a cost of "defending or perfecting title" to the partnership's equitable property in the seat.

Our conclusion that both the costs of litigation and its compromise are capital and not business expenditures is in accord with our decision in Murphy Oil Co. v. Burnet, 9 Cir., 55 F.2d 17, and Moynier v. Welch, 9 Cir., 97 F.2d 471.

In Murphy Oil Co. v. Burnet, supra, an adverse title claim was made against taxpayer's business property. The assertion was that taxpayer's predecessor had purchased the property under false representations. The claim was settled for an amount indicating its lack of substance, but the settlement payment and the litigation

expense were held not deductible. Quoting the Board of Tax Appeals, 15 B.T.A. 1195, this court said (55 F.2d at page 26), "To the extent that the expenses and payment were incurred and made in defense of the claim against the oil properties they were capital expenditures. We have repeatedly held that the cost of defending title, whether in the form of legal fees or compromise payments, is a capital expenditure representing additional cost of the property."

This same language was quoted with approval in the subsequent decision of this court in Moynier v. Welch, supra, 97 F.2d at page 473. Croker v. Burnet, 61 App.D. C. 342, 62 F.2d 991; Brawner v. Burnet, 61 App.D.C. 352, 63 F.2d 129; Jones' Estate v. Commissioner, 5 Cir., 127 F.2d 231; Williams v. Burnet, 61 App.D.C. 181, 59 F.2d 357; Hitchings v. Burnet, App.D.C., 58 F. 2d 514. Cf. Newark Milk & Cream Co. v. Commissioner, 3 Cir., 34 F.2d 854; Crowley v. Commissioner, 6 Cir., 89 F.2d 715.

■ Petitioner contends the deduction should be allowed because there was no merit in the claim of the executors for payment of the $25,000 or the attorneys' fees involved in contest of the suit by the partnership, and that it was an illegal act to refuse to execute the documents for the transfer of the Exchange membership from the estate to the designated partner. Assuming the executors' demand for $25,000 was illegal, it and the attorneys' fees were nonetheless paid for the purpose of "perfecting" the title to the Exchange seat and the equitable property of the partnership in it, and were "made as a condition to the continued use" of its equity. It would be as irrational to treat it as not a capital expenditure as it would be to refuse to deduct the wages of a watchman of an apartment house as an ordinary business expense, because its purpose was to protect the property of a business concern from the illegal acts of burglars.

Petitioner relies on Reakirt v. Commissioner, 29 B.T.A. 1296, affirmed 6 Cir., 84 F.2d 996. In that case the expenditures were in resisting a condemnation of real

[5] The Regulations have been substantially the same through repeated enactments for over 18 years of provisions similar to Sec. 23 (a) of the Act of 1936. They therefore have the legal effect of a Congressional enactment. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; Morgan v. Commissioner, 309 U.S. 78, 81, 626, 60 S.Ct. 424, 84 L.Ed. 585; Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; United States v. Armature Exchange, 9 Cir., 116 F.2d 969, certiorari denied 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531; Commissioner v. Laguna Land & W. Co., 9 Cir., 118 F.2d 112.

estate by the city authorities. It was held a business expenditure in *protecting* the title to the property. The court nowhere considered the language of the statute and Regulations under the rule of New Colonial Ice Co. v. Helvering, discussed supra. Assuming its decision correct, the *protection* of an existing vested title is quite different from *perfecting* for the partnership a title not vested in any partner. Here the person having the legal title was dead. He had ceased to be a partner. No partner had the Exchange seat and until it was vested in some partner, the partnership's equitable property, its capital asset, was of no use to it.. By perfecting the partner member's title to the seat, the partnership's equitable title was thereby perfected.

The order of the Board of Tax Appeals is affirmed.