**BURTON–SUTTON OIL CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. BURTON–SUTTON OIL CO., Inc.**

Nos. 11275, 11285.

Circuit Court of Appeals, Fifth Circuit.

July 6, 1945.

Writ of Certiorari Denied Oct. 15, 1945.

See 66 S.Ct. 93.

622

Norman F. Anderson, Elias R. Kaufman, and W. W. Thompson, all of Lake Charles, La., for petitioner.

Bernard Chertcoff, Sewall Key, and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HOLMES, McCORD, and LEE. Circuit Judges.

HOLMES, Circuit Judge.

These petitions for review, one brought by the taxpayer and the other by the Commissioner, involve income and excess profits taxes for the years 1936, 1937, and 1938. They are from the same decision of the Tax Court, and were consolidated in this court for hearing and disposition.

The issue on each petition arises out of the ownership and operation by the taxpayer of a mineral lease covering a section of land in Louisiana upon which, at the time here involved, 19 producing oil wells had been drilled. The agreement by which the taxpayer acquired its working interest required it to pay 50% of its net profits therefrom to its transferor in addition to royalties. The question raised by the taxpayer is whether it was entitled to deduct from its taxable income the amount of the net profits so paid.

The Commissioner's disallowance of this deduction was properly sustained by the Tax Court. We need only to reiterate here the principle announced in Quintana Petroleum Co. v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 588, that a covenant to pay a percentage of net profits from production does not grant an economic interest in oil in place.[1] The payments thereunder were not made with respect to the royalty interests retained by the taxpayer, but were paid as consideration for the execution of the conveyance.[2] The purchase price of a capital asset is not deductible as a business expense, and income is none the less income by reason of its use for investment purposes.[3]

It is argued that the taxpayer and its transferor were joint adventurers in the enterprise. Since complete control of all operations of the property was in the taxpayer, and under the agreement all operating losses were to be borne by it, we deem this contention to be untenable.

The appeal by the Commissioner assails an allowance of $27,564.61 for legal expenses during the year ending February 28, 1938. The taxpayer deducted this amount in its tax return as an ordinary and necessary business expense; the Commissioner

[1] See also Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Commissioner v. Kirby Petroleum Co., 5 Cir., 148 F.2d 80.

[2] Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904.

[3] Commissioner of Internal Revenue v. Rowan Drilling Co., 5 Cir., 130 F.2d 62.

disallowed the same on the ground that the disbursements were capital expenditures. The Tax Court ruled that these outlays were deducted as ordinary and necessary business expenses under Section 23(a), Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 827. There was no dispute about the facts or any inference to be drawn from the facts, nor was there any intricate matter of administration to be decided. The question was purely one of law: simply a matter of applying to undisputed facts a regulation of unquestioned validity.

The Tax Court overlooked entirely the admitted fact that no interest of the taxpayer was sought to be appropriated, since it had rights only in the underlying minerals, and the condemnation proceeding did not purport to disturb such rights. The condemnation petition expressly provided that the estate to be appropriated for public use was the full fee-simple title subject to existing oil, gas, and mineral rights. The taxpayer proved to all interested parties that such survey was inaccurate and that the proper boundary lines were those which the taxpayer had claimed. The judgment of condemnation described the property in accordance with the existence of the section lines as contended by the taxpayer.

There was no question concerning the right of the United States to take the property that it needed. The taxpayer had no interest in that property, and no legal standing to oppose such taking. The only matter in which the taxpayer was interested related to its title to the minerals and the clouds cast thereon by the survey and condemnation proceeding. All of the expenditures for which deduction is claimed by the taxpayer were made to disperse those clouds. The taxpayer was not to be affected by the impending condemnation; its proprietary interest in the minerals would remain the same regardless of the appropriation of the surface of the land for public use.

■ The costs incurred by the taxpayer in the effort to establish its title to the minerals were deductible only if they constituted ordinary and necessary business expenses within the meaning of Section 23(a) of the Revenue Act of 1936. Section 24(a) (2) of that act, 26 U.S.C.A. Int.Rev.Acts,

page 831, provides that, in computing net income, no deduction shall in any case be allowed in respect of any amount paid out for permanent improvements or betterments made to increase the value of any property. Article 24-2 of Treasury Regulation 94, promulgated under the Revenue Act of 1936, provides that the cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. The validity of this regulation is not assailed; the question is one of its application. As stated by this court in Jones' Estate v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 231, 232: "Consistently since 1916 the Treasury Regulations have provided that the cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. Congressional approval of this interpretation by reenactment of the applicable revenue statutes in successive acts in identical language gives to the regulation the efficacy of law."

■ We think no conclusion can reasonably be drawn from the undisputed facts except that the payments here were made in defending or perfecting the title to the oil, gas, and mineral rights of the taxpayer. If the taxpayer had decided to institute suit to quiet title to or remove the cloud that had been cast upon its mineral rights, its expenses in doing so would not have been deductible. In Jones' Estate v. Commissioner of Internal Revenue, supra, it was said: "It is immaterial that this petitioner was required to defend the title long after the property was first acquired, and at a time when he reasonably might have expected to incur no additional title expense. The nature of a suit to cancel a cloud upon title to real estate remains constant whether the action be prosecuted at the time, or long after, the acquisition of title. It is a contest involving the ownership of the property itself, and the title to property held for profit is a capital asset."

Similarly, if the Orange Cameron Land Company had been the moving party and had questioned taxpayer's rights in the oil and gas deposits where located, the expenses incurred in defending the suit would have been a capital outlay.[4] Any sums that the taxpayer might have paid to compro-

4 Hutchings v. Burnet, 61 App.D.C. 109, 58 F.2d 514; Moynier v. Welch, 9 Cir., 97 F.2d 461; Farmer v. Commissioner of Internal Revenue, 10 Cir., 126 F.2d 542.

mise or to obtain dismissal of the litigation would not have been considered an ordinary business expense.[5]

The fact that the taxpayer chose the negotiations in the condemnation proceedings as the forum in which to establish the validity of its rights is not a differentiating consideration. What is material is that the taxpayer considered it necessary to prove that it had the right to produce oil from the property in question. Its expenses in accomplishing this were just as much capital investments as if it had proceeded to do so in any other manner. The language used in Farmer v. Commissioner of Internal Revenue, supra, is applicable here. There the court said, 126 F.2d at page 544: "The authorities quite generally hold that expenditures made in defense of a title upon which depends the right to receive oil and gas royalty payments are capital expenditures and not deductible as ordinary business expenses. [Citations omitted.] Petitioners did more than to litigate the right to receive oil royalty payments. The title to the oil and gas lease under which they received these payments depended upon the title to the land. Without title to the land they had nothing. It was therefore necessary for them to defend and establish the title to the land in order to retain their interest in the oil and gas."

The deduction claimed by the taxpayer was not spent by it in resisting the condemnation of its property or to obtain just compensation for the same. The taxpayer never made any claim for compensation. Its property was not being taken, and consequently its value was not in controversy. The taxpayer was neither a necessary nor an indispensable party to the proceeding under any survey, accurate or inaccurate. It was at all times a mere nominal party, joined for the sake of safety, and could have entered a disclaimer at a nominal cost.[6]

It was not an ordinary and necessary business expense for a defendant who was only a formal party, who was making no claim for damages, whose property was not sought to be taken, who had no interest in the subject matter, to spend $27,564.61 in defense of a condemnation suit. A fee of $25,000 for the services of an attorney was included in the above amount, and the sole purpose of the expenditure was to remove a cloud from the title to mineral rights and to prevent the darkening of that cloud. Whether such an expense is deductible in most instances is for the Tax Court, but here the facts are not in dispute and there is a valid treasury regulation that denies the right to deduct an outlay that is essentially one of a capital nature. In construing the regulation as not controlling where it was clearly applicable, the Tax Court committed an error of law.[7]

It is said that the issue is more complicated than above stated; that the effect of moving all land lines to the west was to transfer to another section the oil field that the taxpayer had developed in the section described in its lease; that this imperilled the title of the taxpayer to an oil field producing a gross income of over a million dollars annually and from which more than two million dollars worth of oil already had been taken. The taxpayer claims that if it had been unsuccessful in establishing its boundary in the condemnation proceeding, it not only would have lost its oil field, but would have had to account for the oil produced by it from that field. It is certain that no such consequences would have followed directly from·

---

[5] Murphy Oil Co. v. Burnet, 9 Cir., 55 F. 2d 17, affirmed without consideration of the point 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Blackwell Oil & Gas Co. v. Commissioner of Internal Revenue, 10 Cir., 60 F.2d 257; Croker v. Burnet, 61 App.D.C. 342, 62 F.2d 991; Brawner v. Burnet, 61 App.D.C. 352, 63 F.2d 129; Owens v. Commissioner of Internal Revenue, 10 Cir., 125 F.2d 210, certiorari denied 316 U.S. 704, 62 S.Ct. 1308, 86 L.Ed. 1772. See also Schwabacher v. Commissioner of Internal Revenue, 9 Cir., 132 F. 2d 516.

[6] In the federal courts, parties may be classified as follows: (1) Formal or nominal, (2) proper or necessary, (3) indispensable. By technical usage, the word necessary is used in contradistinction to indispensable. Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158; Barney v. Baltimore, 6 Wall. 280, 18 L.Ed. 825; Williams v. Bankhead, 19 Wall. 563, 22 L.Ed. 184; California v. Southern Pacific Co., 157 U.S. 229, 249, 15 S.Ct. 591, 39 L.Ed. 683; Williams' Federal Jurisdiction & Practice (1917) pp. 243 to 250; Rose's Federal Jurisdiction & Procedure (1922) §§ 356, 492; Dobie on Federal Procedure (1928), § 68, p. 213 et seq.

[7] Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171.

the condemnation suit, because surface rights only were acquired thereby and title to oil, gas, and other minerals was expressly excluded; but if the argument be sound, the litigation involved the ownership of property and it is well settled that the title to property held for profit is a capital asset.[8] Not only that, but Article 24-2 of Treasury Regulation 94, which has the efficacy of law, expressly provides that the cost of defending or perfecting title to property constitutes a part of the cost of the property and is not deductible as an ordinary business expense.

The decision of the Tax Court is affirmed in No. 11,275 and reversed in No. 11,285, and the cause is remanded to the Tax Court for further proceedings not inconsistent with this opinion.

LEE, Circuit Judge.

I concur in the result reached and the reasons therefor in No. 11275, but dissent from the result reached and the reasons therefor in No. 11285.

The question involved by the appeal of the Commissioner in No. 11285 is whether $27,564.61, incurred by the taxpayer in attorney's fees and other incidental costs in connection with the settlement of a dispute as to the boundary of certain oil properties operated by it,[1] was deductible as ordinary and necessary business expense under Section 23(a) of the Revenue Code of 1936. The facts briefly stated are: In 1933 the taxpayer acquired a mineral lease covering section 16, township 14 south, range 13 west, in Cameron Parish, Louisiana, and drilled nineteen producing oil wells thereon. In 1937 the United States Government instituted proceedings to condemn 139,248.68 acres of land in Cameron Parish, excluding all sixteenth section lands because of state ownership, for the establishment of a game preserve. The taxpayer was made a defendant in the action because, due to a mistake in the survey of the property by the Bureau of Geological Survey of the Department of Agriculture, it was thought that the wells were located in a section east of Section 16. Thereupon the taxpayer employed an attorney to convince the condemner that the true location of Section 16 was at the site of the oil development.

The attorney's efforts were successful, and in December of 1937 a judgment favorable to the taxpayer was entered in the condemnation suit. The expense and attorney's fees thus incurred were claimed as a deduction in that year. The Commissioner resisted the deduction in the Tax Court and here on the ground that these payments were made in effect to establish or defend the taxpayer's title to its property, and, as such, were not business expenses but were capital expenditures under the rule established by the Treasury Regulations in 1916 and followed thereafter.[2] The soundness of this rule is not questioned, but it has no application here. Whether an item of cost is a business expense is generally a question of fact, determination of which by the Tax Court must be followed if supported by substantial evidence.

The record in this case shows that there was no adverse claim of title ever asserted against the property of the taxpayer. The government did not seek to condemn any sixteenth section lands, nor did it attempt to disturb mineral rights existing in any of the lands taken. The controversy between the taxpayer and the government did not involve title to lands but only the correct boundary of lands covered by recognized titles. The fact that the controversy arose from a condemnation proceeding is significant. Such an action does not per se challenge the validity of or cast a cloud upon the title of any defendant. Its purpose and effect is to purchase the interest condemned from whoever may be the owner, and is accompanied by the constitutional guarantee that in such condemnation just compensation will be paid. The very institution of such a suit is open recognition that the government did not claim title to the condemned lands, and the record in this case shows that no other defendant was asserting any adverse claim to this taxpayer's property.

An action in boundary under Louisiana law does not involve title. Questions of ownership are not in issue, and titles are referred to only to establish boundaries and not as affecting ownership. Keller v. Shelmire, 42 La.Ann. 323, 7 So. 587. By consent of the parties an action of boundary, if brought by one in possession, may

---

[8] Jones' Estate v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 231.

[1] The services covered a period of about two years and the reasonableness of the charge was conceded.

[2] Article 24-2 of Treasury Regulations 94; Jones' Estate v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 231, and cases cited under footnote 2 thereof.

be converted into a petitory action by the defendant setting up title in himself to the property, in which event he becomes the plaintiff and must make out his case on the strength of his own title, not on the weakness of his adversary. Blanc v. Cousin, 8 La.Ann. 71. In this respect an action of boundary is similar to a jactitation suit, which is explained by Judge Walker in Bliss v. Commissioner of Internal Revenue, 5 Cir., 57 F.2d 984, a case somewhat analogous to this. The attorney's fees and incidental expenses paid by the taxpayer were not paid for the purpose of defending title to his leasehold estate but were paid solely to test the validity of the survey made by the Department of Agriculture.

As heretofore pointed out, the taxpayer had nineteen producing oil wells on its leasehold estate, against which no adverse claim of title was being asserted; it is evident, therefore, that the expenditures made by the taxpayer were made to remove a possible obstacle to payment by the pipe line company running the oil, the income, from its lease, an obstacle created by the erroneous survey on the part of the government. In Kornhauser v. United States, 276 U.S. 145, 153, 48 S.Ct. 219, 220, 72 L. Ed. 505, the Supreme Court, in holding that attorney's fees for defending a suit for an accounting by a former business partner were deductible as a business expense in computing income tax, said: "* * * If the expense had been incurred in an action to recover a fee from a client who refused to pay it, the character of the expenditure as a business expense would not be doubted. In the application of the act we are unable to perceive any real distinction between an expenditure for attorney's fees made to secure payment of the earnings of the business and a like expenditure to retain such earnings after their receipt. One is as directly connected with the business as the other."

In Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 252, 88 L.Ed. 171, the Supreme Court, in holding that attorney's fees and other legal expenses reasonable in amount, incurred by the taxpayer in resisting a "fraud order" by the Postmaster General which would have destroyed his business, were deductible as a business expense, said: "It is plain that respondent's legal expenses were both 'ordinary and necessary' if those words be given their commonly accepted meaning. For respondent to employ a lawyer to defend his business from threatened destruction was 'normal'; it was the response ordinarily to be expected. Cf. Deputy v. Du Pont, 308 U.S. 488, 495, 60 S.Ct. 363, 467, 84 L.Ed. 416; Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L.Ed. 212; Kornhauser v. United States, supra. Since the record contains no suggestion that the defense was in bad faith or that the attorney's fees were unreasonable, the expenses incurred in defending the business can also be assumed appropriate and helpful, and therefore 'necessary.' Cf. Welch v. Helvering, supra, 290 U.S. at page 113, 54 S.Ct. at page 8, 78 L.Ed. 212; Kornhauser v. United States, supra, 276 U.S. at page 152, 48 S.Ct. at page 220, 72 L.Ed. 505."

In Bingham's Trust v. Commissioner of Internal Revenue, 65 S.Ct. 1232, 1241, the Supreme Court, in holding that attorney's fees paid by a trustee for legal services concerning "(1) litigation in which the trustees unsuccessfully contested a deficiency claim based on taxable gain to the estate, (2) payment of a legacy, and (3) problems arising from the expiration of the trust and the disposition of its assets," were deductible as a business expense, said: "* * * Section 23(a) (2) does not restrict deductions to those litigation expenses which alone produce income. On the contrary, by its terms and in analogy with the rule under § 23(a)(1), the business expense section, the trust, a taxable entity like a business, may deduct litigation expenses when they are directly connected with or proximately result from the enterprise—the management of property held for production of income. Kornhauser v. United States, supra, 276 U.S. 152, 153, 48 S.Ct. 220, 72 L.Ed. 505; Commissioner of Internal Revenue v. Heininger, supra, 320 U.S. 470, 471, 64 S.Ct. 252, 88 L.Ed. 171." See also Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 78 L.Ed. 212; A. Harris & Co. v. Lucas, 5 Cir., 48 F.2d 187; Bliss v. Commissioner of Internal Revenue, 5 Cir., 57 F. 2d 984; Commissioner of Internal Revenue v. Chicago Dock & Canal Co., 7 Cir., 84 F. 2d 288.

The Tax Court correctly decided that these expenditures were an ordinary and necessary business expense and as such were deductible in the tax year in which such payments were made.